# Marion C. Robertson, Widow of James A. B. Robertson, deceased, Appellant, *v.* The Pennsylvania Railroad Company.

*Negligence—Railroads—Bicycles—" Stop, look and listen "—Grade crossings.*

A " bicycler's stop " by circling on a bicycle is not a stop within the meaning of the rule which requires a person approaching a railroad at a public crossing to stop, look and listen before going upon the tracks.

A bicycler approached a railroad track at a public grade crossing, at a point where there were four tracks, when a freight train was passing. He did not dismount, but circled on his wheel round and round at a distance of from five to ten yards from the track, and when the freight train had

passed he started to cross without dismounting, and was struck and killed by a train coming in the opposite direction on another track.     Before reaching a position of actual danger there was a space of seven feet from which an unobstructed view of the train could have been had.     *Held*, that the death of the bicycler was caused by his contributory negligence and that his widow could not recover damages for his death.

A bicycler must dismount when approaching a railroad crossing, or at least bring his wheel to such a stop as will enable him to look up and down the track and listen, in the manner required of a pedestrian.

Argued Jan. 8, 1897.     Appeal, No. 349, Jan. T., 1896, by plaintiff, from judgment of C. P. No. 2, Phila. Co., June T., 1894, No. 315, refusing to take off nonsuit.     Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.     Affirmed.

Trespass to recover damages for the death of plaintiff's husband.     Before PENNYPACKER, J.

At the trial it appeared that the deceased, James A. B. Robertson, was killed on October 2, 1893, by a train of the defendant company at a railroad crossing in Morrisville, Bucks county. The circumstances of the accident are stated in the opinion of of the Supreme Court.

The court entered a nonsuit, PENNYPACKER, J., saying:

We have had the benefit of having this case carefully and thoroughly argued, and up to this time it must be assumed that there was negligence on the part of the defendant.     The question is whether or not the plaintiff has shown the case to be free from contributory negligence on the part of Mr. Robertson.

There are two witnesses who saw the accident, and they take up the decedent and describe him as riding a bicycle; making curves at a distance of from five to ten yards away from the track.     Presumably he was endeavoring to save himself the trouble of getting off the bicycle by keeping it running while he was waiting.     To the left of him was a toolhouse, which toolhouse, according to the testimony of the only witness who has said anything about it, was about twenty feet from Smith street.     Between the toolhouse and the track was a space of seven feet.     Directly after the freight train had gone by the decedent rode out from behind the toolhouse, where he could

not see the approaching train, and went directly across the track.  One witness says that he did not stop.  The other witness tells us that just as the freight train left he started and went across.  As I have said, between the toolhouse and the track was a space of seven feet.  Not a very large space, it is true, but still enough so that if a man had stopped within it it would have enabled him to save his life.

The questions which have arisen have been generally cases where the man who was injured was driving a wagon.  No doubt seven feet would have been ample for one who was walking, and we may assume that one riding a bicycle has it within his own control, not, perhaps, to the extent of a man who is walking, but certainly very much more so than one who is driving horses where it may be dangerous to stop within so short a space.  Had he stopped within seven feet he could have seen for some distance westward along the track.  Just how far we do not know, but Howell has said he could have seen for one hundred feet.

I do not think it is a case of a presumption arising on account of death, because we have here the actions of the decedent described by witnesses who tell us exactly what did occur.

For these reasons I think the nonsuit will have to be entered.  If I am not correct about it it can be shown hereafter.

The court subsequently refused to take off the nonsuit.

*Error assigned* was order refusing to take off nonsuit.

*Henry Budd* and *B. F. Gilkeson*, for appellant.—This case, of course, stands very largely upon its own facts, as most cases of negligence do; but it is submitted that amongst the authorities on the subject the following are of weight in this case: Davidson v. L. S. & M. S. R. R., 37 W. N. C. 317; Hoffmeister v. R. R., 160 Pa. 568; McGill v. P. & W. Ry., 152 Pa. 332; Ely v. P., C., C. & St. L. R. W., 158 Pa. 233; Arnold v. R. R., 161 Pa. 1; Gray v. Penna. R. R., 172 Pa. 383; Roberts v. D. & H. Canal Co., 177 Pa. 183.

*David W. Sellers*, for appellee.—The suggestion that there was a temporary obstruction of view (although there was none if the deceased had stopped on the seven feet), is answered by

the cases of Kraus v. Penna. R. Co., 139 Pa. 272; Schmidt v. Phila. & Reading R. R. Co., 149 Pa. 357; Beynon v. R. R., 168 Pa. 642.

OPINION BY MR. JUSTICE MITCHELL, January 25, 1897:

The facts in regard to the decedent's negligence are not disputed. He was riding a bicycle, and when he came to defendant's road, which at that point had four tracks, a freight train was passing, for which he had to wait. He did not dismount, but made what the appellant calls a "bicycler's stop" by circling on his wheel round and round at a distance of five to ten yards from the track, and when the freight train had passed he started across without dismounting, and was struck by a train coming in the opposite direction on another track. Passing by the questions raised as to his ability to see the coming train from other points, it is admitted that before reaching a position of actual danger there was a space of not less than seven feet between the toolhouse and the nearest track, from which an unobstructed view of the train could have been had. It was the duty of the deceased to stop there and to dismount in order to make his stop effective for the purpose of looking and listening. The real contention of the appellant is embodied in the proposition that the circling round and round constituted a legal as well as a "bicycler's stop." No such proposition can be entertained for a moment. In so circling the rider must to some extent have his attention fixed on his wheel, and at parts of the circle must have his back to the track which he is professing to watch. The law requires a full stop, not only for the sake of time and opportunity for observation, but to secure undivided attention, and the substantial and not merely perfunctory performance of the duty to look and listen. Riding round and round in large or small circles, waiting for a chance to shoot across, is not a stop at all, either in form or substance. Considering the ease of dismounting and the control of the rider over his instrument, a bicycler must under all ordinary circumstances be treated as subject to the same rules as a pedestrian. We do not say that there may not be cases of accident by broken gearing, or steep grade or other casualty which will require a modification of the application of such rules, but these cases will be exceptional, and must be decided on their own facts when they arise. The

general rule to be applied requires that a bicycler must dismount, or at least bring his wheel to such a stop as will enable him to look up and down the track and listen, in the manner required of a pedestrian. It is plain that the deceased in the present case did not do this, and that his failure to do it was an efficient element of the unfortunate accident by which he lost his life.

Judgment affirmed.