STATE OF MARYLAND, Use of Lena B. Cullen, Widow, and Emily Matilda Cullen, Infant, etc.,

*vs.*

N. Y., PHILA., & NORFOLK R. R. CO.

*Negligence: Railroad tracks; duty of persons crossing—.*

Well defined and imperative duties are imposed upon persons before they attempt to cross the tracks of a railroad company.
                                                        p. 655

One about to cross the tracks of a railroad is bound, under all circumstances, to look and listen for approaching trains, and if the crossing is one of more than ordinary danger, and the view of the tracks is obstructed, at or near the place of crossing, it is the duty of the traveler to *stop, look and listen,* before he attempts to cross.                    p. 655

If a person neglects these necessary precautions, and in consequence of such neglect is injured by collision with a passing train, he will be held to have contributed by his own negligence to the occurrence of the accident, and is thereby precluded from recovering for such injury.                    p. 655

A person, approaching a railroad crossing on a bicycle, while the tracks were partially concealed by standing cars, and, not heeding the ringing of the bell of an approaching train, continued his way, without pausing or stopping to look or listen, and was run into and killed: *Held,* there could be no recovery against the railroad company.              pp. 657-659

Where there is no evidence to show that the employees of a railroad company had seen the position of danger in which a person, on or about to cross the tracks, had negligently placed himself, the plaintiffs suing the railroad company for damages for the death of such party, can not invoke the doctrine that, in spite of the contributory negligence of the party, the defendant company was liable.                        p. 659

*Decided February 9th, 1916.*

Appeal from the Circuit Court for Somerset County. (STANFORD, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Alonzo L. Miles* (with whom was *H. Fillmore Lankford* on the brief), for the appellants.

*George Myers* (with whom was *Joshua W. Miles* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellants, the widow and infant child of Frederick Cullen, brought suit against the appellee in the Circuit Court for Somerset County, to recover damages for the death of the said Frederick Cullen, resulting, as alleged, from the negligence of the defendant company.

On the afternoon of September 20th, 1913, Frederick Cullen, while riding on a bicycle upon one of the streets or highways of the town of Crisfield, Somerset County, Maryland, attempted to cross the tracks of the appellee and was struck and killed by one of its moving trains.

The defendant company owns and operates a branch road running from Kings Creek in Somerset County, a station upon the main line of its road, to and through the town of Crisfield. Its general direction in entering and passing through said town is from northeast to southwest. The place at which the accident occurred was near the terminus and the yard of the company, and at such place there was a switch on the southeast side of the main track of the defendant's road, starting at a point northeast of said street and extending across it to a point some distance southwest of it. On the occasion of the accident there was upon this switch a number of cars belonging to a circus then visiting the town.

These cars were on both sides of the street, leaving only an open space of eighteen or twenty feet, the width of the street, between them. This was done to permit those traveling upon the street to cross the defendant's tracks at this point.

The train by which Cullen was killed was made up of three cars, engine and tender, and was at the time of the accident backing down to the yard with the tender at the head of the train.

George Whittington, a witness for the plaintiff, testified that just prior to the time the accident occurred, he was seated on his wagon upon said street or highway, fifteen or twenty yards to the southeast of said crossing awaiting the train to pass. The train at this time was moving slowly from the northeast towards the crossing, and the bell upon the engine was ringing. It was because of the ringing of the bell that he had stopped to await the passing of the train. That while so waiting, Cullen rode by him on his bicycle going towards the crossing and without stopping "he attempted to pass over, and time he got on the crossing the train was coming down and he come into collision, and seeing he could not rescue himself he tried to turn his front wheel, and he caught hold, trying to rescue himself, he caught hold of a part of the car, and it struck him down, and the wheel remained there, and when I leaped from my wagon, I leaped from my wagon and run to see what the end would be, as the car was coming down, and I seen between—that he was contending for his life and holding on, and he continued on, and finally at last I saw him drop. He could not hold on any longer." Upon cross-examination the witness was asked: "Q. Did Cullen ever stop until he got on part of the main track? A. No, sir; in my judgment he never stopped at all. Q. He was on the track itself the train was on before he ever stopped? A. Yes, sir; it seemed he was, and when he saw he could not make his escape across, it seemed as though he made an attempt to turn his wheel, and managed to strike the side of the track that the car was going

down on and when he struck it is bounced him up, and then
to rescue himself he grabbed for the cars, she was coming
to him, and then the wheel he was sitting on kind of tangled
him and he continued to hold there until she dragged him a
certain distance, and until he was compelled to break his
holt."

The only other witness who saw the accident was Mrs.
Margaret Tyler, a witness produced by the plaintiff, who testi-
fied, that she at the time of the accident was standing in the
door of her house, which is located on the northwest side of
the railroad track and on the southwest side of, and 133 feet
from, the aforesaid street or highway, and faces the tracks
of the company. She was asked the question: "State to the
jury in your own way just what you saw when you were
standing in your doorway and the train approached? A.
When I first went to the door, I saw a man thrown over his
wheel. He just went up and came down, and it looked—he
grabbed hold of the tender and tried to hold it and it dragged
him in foremost, and then when he was dragged under, when
he must have let go, after turning him over, and I could not
see any more of him at all until he got in near half way, to
the cars and then he dropped down." She further testified
that she screamed and waved her apron in an attempt to
attract the attention of the engineer and fireman upon the
engine. This was while Cullen, as she says, was clinging to
the tender which was at the time about half way from the
crossing to a point in front of her house, but she could not
make herself heard. She then ran out and threw up her
apron, and finally attracted the attention of the engineer and
fireman, and, as she says, "the train stopped immediately."
She also testified that she heard the bell ringing on the
engine, and that at such time the train was moving slowly.

Warren Gundy, a witness for the plaintiff, testified that
he was at the place of the accident shortly after it occurred,
and saw the body of Cullen lying at a point about opposite
Mrs. Tyler's house. That he examined the track between

that place and the crossing, and found blood at a point ten or fifteen feet from the body in the direction of the crossing.

William Pennell, the conductor, who was called as a witness by the plaintiff, testified that the train on the occasion of the accident when approaching the crossing referred to, was, in his judgment, going about four miles an hour.

At the conclusion of the testimony the case was withdrawn from the consideration of the jury upon the prayer of the defendant "that under the pleadings and evidence in this case, there is no legally sufficient evidence to entitle the plaintiff to recover."

The view of the track was no doubt greatly obstructed by the cars upon the switch, when approached from the southeast, but this fact did not lessen the care and caution to be exercised by Cullen in crossing it, but on the contrary, imposed upon him greater care and caution in approaching and crossing the same.

This Court, speaking through JUDGE BURKE, in *Manfuso* v. *Western Md. R. Co.,* 102 Md. 257, said: "By the settled law of this State certain well-defined and imperative duties are imposed upon persons before they make the attempt to cross the tracks of a railroad company.

They are bound under all circumstances to look and listen for approaching trains, and if the crossing is one of more than ordinary danger and the view of the tracks is obstructed at, or near the place of crossing, it is the duty of the traveller to *stop, look and listen,* before he attempts to cross, and if a person neglects these necessary precautions, and in consequence of such neglect is injured by the collision with a passing train, he will be held to have contributed by his own negligence to the occurrence of the accident, and will not be allowed to recover for any injury he may have sustained."

Both George Whittington and Mrs. Tyler heard the bell ringing upon the moving engine, the former at a distance of at least fifteen or twenty yards and the latter fifty or more yards from the crossing. It is not shown that Cullen heard

the bell, but it is disclosed by the evidence that he at no time after being first seen by Whittington, ever stopped to listen for any signal or warning of danger.

It may have been that Cullen could not have seen the moving train until he had reached a point within a few feet of the tracks. He was, however, riding upon a bicycle, and at this point he could easily have stopped and dismounted and there looked and listened for an approaching train, which, as shown by the evidence, he failed to do, but rushed headlong into the passing train, meeting his death in the manner prescribed in the testimony above stated.

In the case of *Robertson* v. *Pennsylvania R. R. Co.,* 180 Pa. 43, 36 Atl. Rep. 403, the decedent was riding a bicycle, and when he came to the defendant's road which at that point had four tracks, a freight train was passing, for which he had to wait. He did not dismount, but made what the appellant called "a bicycler's stop," circling on his wheel around and around for a distance of five or ten yards from the track, and when the freight train had passed, he started across without dismounting, and was struck by a train coming in the opposite direction on another track. The Court there said: "Passing by the questions raised as to ability to see the coming train from other points, it is admitted that, before reaching a position of actual danger, there was a space of not less than seven feet between the tool house and the nearest track, from which an unobstructed view of the train could have been had. It was the duty of the deceased to stop there and to dismount in order to make a stop effective for the purpose of looking and listening. * * * The general rule to be applied requires that a bicycler must dismount, or, at least, bring his wheel to such a stop as will enable him to look up and down the tracks and listen in the manner required of a pedestrian."

It is clear, we think, from the evidence that Cullen contributed by his own negligence to the occurrence of the accident resulting in his death.

It is, however, contended by the defendant that because of the increased danger to travellers upon said street or highway at the aforesaid crossing, caused by the cars being upon the switch, a greater duty was imposed upon the defendant in notifying such travellers of the danger incident to the crossing of its tracks at such point, and that it negligently failed to perform the greater duty so imposed upon it. It is unnecessary for us to consider and decide this question, for should it be held that the defendant was negligent as claimed by the plaintiffs, they, nevertheless, would not be entitled to recover, because of the contributory negligence of Cullen in entering upon the tracks of the defendant company in the manner described above. *United Electric and Railway Company* v. *Durham,* 117 Md. 192; *McNab* v. *Railway Company,* 94 Md. 719; *Heying* v. *United Electric Ry. Co.,* 100 Md. 281; *State Use of Silver* v. *P. B. & W. R. R. Co.,* 120 Md. 70.

A similar contention was made in the case of *Passman* v. *West Jersey & Seashore R. R. Co.,* 68 N. J. L. 719; 54 Atl. Rep. 809. In that case an action was brought by the administratrix of William Passman to recover damages for his death which was caused by one of the engines of the defendant company colliding with him as he was attempting to cross its tracks on Ohio avenue in Atlantic City on a bicycle. At the time of the accident the Railroad Company had four tracks across the avenue upon which the decedent was riding. The two nearest the deceased as he approached the crossing were side tracks used for the shifting and storing of cars. Beyond these were the two regular express or incoming and outgoing tracks. Just prior to the accident a train of empty cars had been placed upon the side track. This train had been cut, leaving some cars to the east and some to the west of the avenue; thus permitting passage over the avenue for vehicles and pedestrians. The decedent as in this case proceeded to cross the tracks of the defendant company without exercising the care and caution required of him and was killed.

It was contended by the counsel for the plaintiff that the empty cars left on the side track obstructed the view of the incoming train, and that none of the statutory signals were given by the defendant of the approach of its train, and therefore it was liable in damages for his death. The Court there said: "No negligence, however, on the part of the railroad employes, would excuse the plaintiff's intestate from exercising reasonable and ordinary care in approaching this crossing, which was a place of obvious and known danger, so that his failure to observe such care would preclude the plaintiff's right of recovery. The cutting of the train was not an invitation to cross without exercising reasonable care. It was only for the purpose of furnishing an opportunity to those who might desire to cross while using the ordinary prudence required by the law under the circumstances apparent from the condition of the crossing. The absence of the statutory signals did not justify the deceased in assuming that it was safe for him to cross. He should have used reasonable care for his own preservation, and, failing therein, he cannot shift the sole responsibility upon the company. If by taking ordinary care he could have avoided the danger, his failure to do so negatives the plaintiff's right of recovery. One cannot recover for the breach of duty of another when he is lacking in ordinary prudence himself."

The plaintiffs also relied on what is sometimes called "Negligence in the Third Degree," and contended that the case should have gone to the jury on the evidence offered as to whether the company's agents could have, by the exercise of reasonable diligence, avoided the consequence of Cullen's negligence in attempting to cross the tracks of the defendant company.

The doctrine here invoked presupposes that the defendant's employees knew, or by the use of due care could have known, of the peril in which the injured party had, by his own negligence placed himself; and that they either knew or could have known of that peril in time to avert the injury. *McNab* v. *Railway Company, supra.*

When shown that the deceased was guilty of contributory negligence in attempting to cross the tracks under the circumstances related, the burden was shifted and the plaintiffs were required to show that the defendant's employees were guilty of negligence in not avoiding the accident, notwithstanding the negligence of the deceased. *State, use of Silver, v. P., B. & W. R. R. Co., supra.*

There is, we think, no evidence to go to the jury, tending to show that Cullen was seen or could have been seen by the employees of the defendant company, in the position of peril, upon the tracks of the defendant, in which he had placed himself by his own negligence, or that they knew or could have known of his position of peril in time to have avoided the consequences of his said negligent act. The first intimation they had of his perilous position, as far as the record discloses, was when their attention was called thereto by Mrs. Tyler, when, as she says, the train was "immediately stopped."

It is clear to us that the last negligent act was the act of Cullen in attempting to cross the track in the manner in which he did, and the doctrine here sought to be applied is only applicable when the defendant's negligence in not avoiding the consequences of the plaintiff's or deceased's negligence is the *last* negligent act. It can never be invoked when the plaintiff's or the deceased's own act is the final negligent act. *McNab* v. *United Rys. Co., supra.*

In view of what we have said it is not necessary for us to pass upon the exceptions to the testimony, as the conclusion reached by us would not be affected by the admission of such excluded testimony. The judgment below will be affirmed.

*Judgment affirmed, with costs to the appellee.*