STATE, USE OF McLUCAS *v.* WESTERN MARYLAND
RWY. CO.

[No. 87, October Term, 1947.]

*Decided February 20, 1948.*

26

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Edward Oswald, Jr.*, with whom was *George N. Oswald* on the brief, for the appellant.

*E. Stuart Bushong* and *Irvine H. Rutledge*, with whom were *Paul S. Parsons* and *Lane, Bushong & Byron* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

On August 31, 1946, Charles E. McLucas, the husband of the use plaintiff (appellant) herein, was struck and killed by an empty coal car of the Western Maryland Railway Company. This occurred on Lee Street in the town of Hagerstown. McLucas was walking westerly on the north side of the street. Just ahead of him was an open area, where were located various tracks of the Railway. To his left was a track which ran to an elevated coal tipple of the Leister Coal Co. This tipple was 387 feet south of Lee Street. This track crossed another track slightly to the south of the center of Lee Street. The last mentioned track ran to the Howard Feed Company's property on the north side of Lee Street. These tracks or sidings curved to the west and east respectively shortly before their crossing, and on the plat in evidence in the case, they present a picture of an X, with its center on the south side of Lee Street. Crossing Lee Street to the west of these two tracks are other tracks, and on one of these, north of the street was a Diesel locomotive. In the center of Lee Street, between these tracks and the X made by the sidings above mentioned, the Railway had a watchman.

Just prior to the accident the foreman of the appellee was also in the middle of Lee Street between the tracks. He gave a signal to the railroad employee on the coal car at the tipple and, in response, the latter released the brake on this car, and it started down the incline. The man riding on it was where he could not see in front of the car, so that he depended on the signals of the foreman. There was nothing further for him to do unless it became necessary to apply the brakes which were modern and effective. The momentum of the car would carry it across the X and to the north side of the area where the foreman wanted it to go. When the car started, the bell of the Diesel engine began to ring to give warning. The motor of the engine was running.

McLucas kept on walking and when the watchman and the foreman saw him still on his way toward the track on which the coal car was coming, they shouted at him and gesticulated in an effort to stop him. The watchman was holding up a large "stop" sign. McLucas was walking with his head down, but he looked up and to his left when the foreman called to him. The approaching coal car was then directly in his line of vision, and he was three or four feet east of the Howard Feed Company track. This track, in the path in which he was walking, was about thirteen feet east of the Coal Company track on which the car was coming, counting from inside rail to inside rail. The car was about twenty to twenty-five feet from the south side of Lee Street and was moving about seven miles an hour.

McLucas did not stop after he looked towards the car. On the contrary, he started to run, crossed the Howard Feed Company track and the space between that and the Coal Company track, and got as far as the east rail of the latter. He then apparently made an effort to stop, but was struck there by the coal car. After the car passed, the foreman went over to where he was lying on the ground. He said "I didn't jump quick enough" and almost immediately died.

28

The foreman did not attempt to stop the car by signalling to the man on it to apply the brakes. It appears from the testimony that after the car is half-way from the tipple to Lee Street, the rider cannot see the Lee Street crossing, so that it is doubtful if the man on the car could have seen any signal given by the foreman after the latter saw McLucas running. When the foreman first saw McLucas, the latter was about ten feet from the Howard Feed Company track. At the trial, the widow testified that the route her husband was taking was his usual way to go to work, and that he was perfectly familiar with the crossing at which he was killed. He was 64 years old.

A suit was brought in the Circuit Court for Washington County in the name of the State for the use of the widow of McLucas under the provisions of the Maryland version of Lord Campbell's Act, Code, Article 67. After the testimony on behalf of the plaintiff was concluded, the trial court granted defendant's demurrer prayer and its prayer that the deceased was guilty of contributory negligence as a matter of law. From the judgment for the defendant for costs, this appeal is taken.

The appellant contends that the evidence shows the railroad was negligent because the trestle from which the coal car was released could not be seen by a person walking in front of the Howard Feed Company building, because the coal car was permitted to run by gravity without being equipped with any warning device, because the employee on it could not see the crossing after the car was half way down the siding, because the bell on the locomotive was ringing and the motor was running, because neither the watchman nor the foreman was on the east side of the crossing where they could stop pedestrians before they reached the tracks, and because their yelling, waving and shouting, coupled with the noise made by the engine so confused McLucas that he did not know how to escape.

It is not necessary for us to determine whether these contentions considered separately or together, were sufficient to permit the jury to consider the question of primary negligence on the part of the railroad, because we are clearly of the opinion that the negligence of McLucas contributed directly to his death. He was in a place of safety when he was first made aware of the signals of the appellee's employees. He looked to his left, and there, in plain view, was the car approaching on the tipple track. Had he stood still, the car would have passed in front of him, at a distance estimated at from seventeen to twenty feet from him. Instead he ran forward. A rational conclusion would be that he tried to run ahead of the car, and miscalculated. Whether that is true or not, he went from a place of safety into the danger zone, and the resulting unfortunate happening was of his own making. His last words seem to indicate that he was aware of this.

Appellant seeks to excuse this contributory negligence by applying a theory of law, sometimes known as the doctrine of diverting influences. This is, in effect, a holding that where there is a threat of danger from sources other than that of an approaching train, and a person's entire attention is absorbed by this threat, so that he neglects to exercise the degree of caution usually required before going on railroad tracks, if he is injured by the train, he will not be held guilty of contributory negligence as a latter of law. See *Chisholm v. Seaboard Air Line Ry.*, 121 S. C. 394, 114 S. E. 500. It is, in reality, not a separate theory of law. It is a consideration of circumstances in certain cases which results in decisions that plaintiffs are not so clearly guilty of negligence contributing to their injuries, that the courts can so decide. In other words, in such cases the plaintiff's actions were held not negligent; or at least not so clearly negligent that a jury could not pass upon them.

It does not appear that such a decision has ever been directly made in this State, but were we disposed to adopt it in the form contended for by appellant or ap-

plied by the South Carolina court, we find no facts in the case before us which make it pertinent. There was no threat of danger from any other source. There is no evidence or indication that the deceased heard or paid any attention to the ringing of the bell on the Diesel engine or that he thought that engine was moving toward him. He did not even look in that direction. He looked at the approaching car, and then attempted to cross in front of it. There was no threat to his safety from any other source which could have reasonably confused him, and caused him to act as he did. He was at a familiar crossing, and it does not appear that anything was done by the employees of the railroad which misled him or which was calculated to mislead him. See *Philadelphia, W. & B. R. R. Co. v. State, use of Gunther,* 66 Md. 501, 8 A. 272.

Appellant also claims that even if the deceased was guilty of contributory negligence, the railroad had the last clear chance to avoid the accident, and therefore the case should have been submitted to the jury on this theory. But the foreman could not have known that McLucas was going to run until he started, and then there was no chance to cross the track and stop him. Had the foreman attempted this, there would probably have been two deaths instead of one. And the man on the car did not know of the impending accident because from his position he could not see the crossing.

As we find no error in the ruling of the trial court, the judgment will be affirmed.

*Judgment affirmed with costs.*