## BALTIMORE & OHIO RAILROAD CO. *v.* LEASURE

[No. 8, October Term, 1949.]

524

*Decided November 9, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*D. Lindley Sloan* and *E. Stuart Bushong,* with whom were *Wm. A. Gunter* and *Irvine H. Rutledge* on the brief, for the appellant.

*James Alfred Avirett* and *John Wagaman* for the appellee.

HENDERSON, J. delivered the opinion of the Court.

This is an appeal from a judgment for $14,000, entered by the court after the plaintiff filed a remittitur of $3,500, as directed by the court, from a jury verdict. The case arose out of an accident in Cumberland, in which a pedestrian was struck by a "shifter" backing over a railroad grade crossing. The declaration alleged negligence on the part of the railroad company, in the operation of the shifter at an excessive rate of speed, lack of warning, failure to maintain a proper lookout, and failure to stop promptly after striking the plaintiff.

The scene of the accident was the Baltimore Street crossing of the railroad, which consists of seven tracks over a heavily travelled, paved intersection in the heart of Cumberland. The most northerly track, No. 1, is used for westbound passenger trains, No. 2 for eastbound passenger trains, No. 3 for freight trains, and No. 4 for freight and shifting operations. South of No. 4 track there is a space of about 18 feet, between the four main tracks and three side tracks that are seldom used. The total length of the crossing, in a northerly direction, is 87 feet, its width is 62 feet.

At about 3:45 p.m. on November 12, 1947, the plaintiff, 79 years of age, was on his way home from work. It was daylight and the weather was clear. The plaintiff was entirely familiar with the crossing, which he used daily, and knew that a watchman was always on duty to control traffic there. The watchman's box is located at the northwest corner of the intersection. The plaintiff's sight and hearing were normal for his age. He approached the tracks on the east side of the street, proceeding in a northerly direction, and stopped just short of the No. 4 track to await the passage of a freight train going east on No. 3 track. He was about 10 feet from the easterly side of the crossing. He stood there about 5 minutes. After this train had passed, he stepped

into the No. 4 track, where he was immediately struck by the tender of a shifter engine backing in a westerly direction. He testified that he did not look to his right before stepping on the track, although he heard "the bell ringing on the engine", that he was "in a hurry to get across, I guess". He was struck by the rear end of the tender after he had taken "not over one or two steps". There was a projecting step behind the wheels on each side and a projecting coupler in the middle. He was knocked down and pushed along the track to a point near the westerly side of the crossing, at which point one of the wheels on the northerly rail passed over his leg and severed it.

Louis H. Lehman, a witness for the plaintiff, testified that he was standing at the crossing awaiting the passage of the freight train. An elderly couple was standing to his left, and the plaintiff further to his left. After the train passed, the elderly gentleman started across in front of the shifter, but the witness pulled him back. He saw the plaintiff start across and yelled at him, "but he seemed to get excited and threw up his hand and started to turn back but then he went ahead the other way". He saw the tender strike him, then "it got out my view". He estimated that it was about 45 or 50 feet from the point of impact to the point where the plaintiff was lying after the accident. The bell on the shifter engine was ringing all the time.

Joseph A. Kienhofer, a witness for the plaintiff, testified that he was on the west side of the crossing. He did not see the tender strike the plaintiff, but saw him pushed from 20 to 35 feet along the track.

John Parch, a witness for the plaintiff, testified that he was going north on the west side of Baltimore Street. He saw the plaintiff struck by the step on the tender; the plaintiff "did not fall right away" but "took 3 or 4 steps with his hands up in the air" before he was knocked down on his back and pushed. The engine was going so slowly "that you could walk in front". The wheel passed over the plaintiff's leg when he was four or five feet

from the westerly side or edge of the crossing. This was confirmed by the testimony of other witnesses as to blood spots on the rail about three feet from the westerly edge. When the plaintiff was down on the track he heard shouts of "stop the engine", and "you are dragging a man under the engine". After he heard this, the tender pushed the plaintiff about 25 feet before it came to a stop. He saw the watchman standing in the middle of the crossing on No. 2 track, and heard him blowing his whistle.

The engineer testified that at the time of the accident he was running at 2 or 3 miles per hour, with the automatic bell ringing. He was seated on the right side of the engine, looking back over his right shoulder at an angle along the side. The tender was about 23 to 26 feet long. There was a car ahead of the engine, with its brake set.

He did not see any one standing close enough to the track to be in a position of danger. As he approached the crossing he looked at his air gauge overhead, to see what the pressure was, for "maybe one or two seconds". It was necessary to look at the gauge to see how much brake was on; "you do not want to put enough on to stall and yet you slow down, too." He intended to stop at a switch just west of the crossing. He did not see the plaintiff step on the track. He could not see behind the tender. He did not know that plaintiff was on the track until the fireman, on the opposite side of the cab, called to him to stop. He then put the air in emergency and stopped in 1 or 2 feet.

The fireman testified that he was looking back out of the left window of the cab. There were a number of pedestrians waiting on that side after the freight train cleared the crossing. He saw the watchman in the middle of the crossing. He did not know that anything was wrong until he heard the watchman call something to him and told the engineer to stop. He did not see the plaintiff until he got down from the cab. The tender body overhangs the rails about 1 1/2 feet on each side.

The watchman testified that he was standing with his stop sign raised on No. 2 track when the freight train passed. Two women on the west side of the crossing started to cross when the freight train passed, and he "went over to them and got them back off of there and I stepped back then". He first saw the plaintiff on No. 4 track "about 6 feet from the west side of the crossing." He did not blow his whistle, but yelled to the fireman to stop. The engine stopped in about 12 feet after he yelled. He took 2 or 3 steps forward to call up to the fireman, just opposite him. He did not see the train strike the plaintiff or knock him down.

From this brief summary it is clear that the charges of excessive speed and lack of warning are wholly unsupported. It is conceded that the plaintiff was guilty of negligence in failing to heed the warnings and leaving a place of safety without looking to his right before stepping on the No. 4 track. The appellee contends, however, that there is legally sufficient evidence of a failure to maintain a proper lookout and failure to stop promptly, on the part of the railroad employees, to justify the submission of the case to the jury under the doctrine of last clear chance.

At the conclusion of the testimony the defendant moved for a directed verdict, which motion was refused on the ground that the doctrine of last clear chance was applicable. The Court noted for the record that "if the defendant would offer a prayer on the doctrine of last clear chance it would be granted". No such prayer was offered. The court later denied a motion for judgment N. O. V. There was no oral charge. The only instruction, other than an instruction as to damages, was contained in the plaintiff's first prayer, which read as follows:

"The jury is instructed that if they find from the evidence that the engine of the Defendant Corporation struck the Plaintiff while the Plaintiff was in the act of walking across the Baltimore Street crossing of said Defendant Corporation in the City of Cumberland, and

that Plaintiff was dragged, pushed or carried across said crossing to a point a short distance Northwest of said crossing, and find that said Plaintiff's leg was crushed and mangled after he had been pushed or dragged across said crossing and had fallen between the rails, and if the jury further find that the Plaintiff was in a position of peril in relation to said engine while he was still upon the Baltimore Street crossing, and find that the engineer in charge of said locomotive could by the exercise of reasonable care for the safety of persons on said crossing have known of said position of peril while the Plaintiff was still on said crossing in such time that the engineer could by the exercise of reasonable care and caution have stopped said engine and avoided the crushing and mangling of the Plaintiff's leg, then the verdict of the jury must be for the Plaintiff; unless the jury shall further find that the Plaintiff could by the exercise of ordinary care and caution, have extricated himself from the perilous situation in which he was placed and thereby avoided the injuries."

The defendant filed a special exception to the granting of this prayer, in the following terms:

"The defendant specially excepts to the granting of the plaintiff's 1st prayer because there is no evidence offered in this case for the defendant's engineer to know that the plaintiff was in a position of peril in relation to said engine while still on the Baltimore Street Crossing or any evidence from which it might be inferred that the engineer could, by the exercise of reasonable care, have known of the position of peril of the plaintiff after he had stepped upon the railroad track on which the locomotive was then running until warned by the fireman."

This prayer is predicated solely upon the negligence of the engineer. The evidence is clear that the engineer did not know that the plaintiff was in a position of peril until warned by the fireman. It is also clear that the engineer could not see behind the tender and could not have seen the plaintiff after he stepped on the track.

Whether the engineer could have seen the plaintiff in the act of stepping behind the tender, from his position in the cab, is not shown by the testimony. His view was obviously obscured by the presence of other pedestrians in his line of sight. His momentary glance at his gauge as he approached the crossing, if it may be taken as an explanation of his failure to see the plaintiff, was necessary to the performance of his primary duty in the operation of the train, and he was entitled to assume that pedestrians in a place of safety would regard the warnings of the bell and watchman. *Cf. State, use of McLucas v. Western Maryland Railway Company,* 190 Md. 25, 29-30, 57 A. 2d 283, 285. Even if we assume that the engineer was negligent in taking his eyes off the street, his negligence was clearly concurrent with that of the plaintiff. When the plaintiff stepped on the track he not only put himself in danger, but he removed himself from any possible view of the engineer. And it may be inferred that even after the plaintiff was on the track he was not helpless but might have regained a place of safety, before the impact, if he had not turned back and then started forward again as described by the witness, Lehman.

The doctrine of last clear chance has long been recognized in Maryland. *Pennsylvania Railway Company v. Simmons,* 159 Md. 114, 150 A. 263, and cases cited. The true basis of the doctrine is somewhat obscure. See *Prosser, Torts,* 1941, p. 415; *Bohlen, Torts* p. 534; 65 L. Q. R. 237; 53 Harv. L. R. 1225. It can hardly be explained in terms of proximate cause. In this State, at least, it may be predicated, under some circumstances, upon a discoverable as well as a discovered peril. But we have also held that the defendant's negligence must have been sequential, and not concurrent, for the doctrine to apply.

In *Cullen v. New York P. & N. R. Co.,* 127 Md. 651, 96 A. 809, 812, a bicycle rider was struck by the tender of an engine, backing over a crossing, and carried a considerable distance before he fell under and was killed.

In denying recovery on the theory of last clear chance, it was said: "It is clear to us that the last negligent act was the act of Cullen in attempting to cross the track in the manner in which he did, and the doctrine here sought to be applied is only applicable when the defendant's negligence in not avoiding the consequences of the plaintiff's or deceased's negligence is the *last* negligent act. It can never be invoked when the plaintiff's or the deceased's own act is the final negligent act." See also *Jackson v. Forwood,* 186 Md. 379, 387, 47 A. 2d 81, and cases cited.

The *Cullen* case may be compared with *Payne v. Healey,* 139 Md. 86, 99, 114 A. 693, 698, in which an automobile was struck at a crossing and there was testimony that the engineer could have seen the automobile attached to his engine after the collision and have stopped, at the rate of speed he was moving 4 miles per hour, before it was catapulted into a semaphore some 300 feet away. The court said that the question was "whether the employees of the defendant in the operation of the train, by proper care and caution could have avoided the collision of the automobile with the semaphore after they knew, or by reasonable care and caution could have known, of the perilous situation of the plaintiff caused by the collision of his automobile with the defendant's engine". The distinction between these two cases, the opinions in which were written by the same judge, seems to be that in the former the engineer could not have seen the plaintiff after he placed himself in a position of peril, while in the latter he could.

In the case at bar, we think the evidence was legally insufficient to charge the engineer with notice of the plaintiff's position of helpless peril behind the tender. The defendant was entitled to an instruction on this point. *Pennsylvania R. Co. v. State,* 188 Md. 646, 53 A. 2d 562, 567. We think the court erred in granting the plaintiff's first prayer. But the further question arises as to whether there was legally sufficient evidence to take the case to the jury on the ground that the watch-

man failed in his duty after he saw, or ought to have seen, the plaintiff in a helpless position.

The testimony is clear that after the initial impact, at a point about 10 feet from the easterly side of the crossing, the plaintiff was pushed to a point about 5 feet from the west side of the crossing, where his leg was severed, or a distance of 47 feet. Even if we assume that he did not fall until he had taken 3 or 4 steps, the testimony is clear that the engine could have been stopped, at a speed of 2 or 3 miles per hour, in time to avoid this serious injury. There is evidence that the plaintiff's predicament was observed by bystanders, who cried out to stop the engine, but the watchman did not observe it until the rear of the tender was within 6 feet of the westerly side of the crossing. We think this evidence was legally sufficient to bring the case within rule laid down in *Payne v. Healey, supra.*

The watchman was the person primarily responsible for the safety of pedestrians at the crossing. Even though he could not have anticipated or prevented the plaintiff's reckless act, it was his duty to mitigate the injury by all means at his command. His failure to see what other bystanders saw might, under the circumstances, be considered a negligent act subsequent to the plaintiff's negligence in stepping on the track, and thus raise the issue of last clear chance.

The *Restatement, Torts,* § 479, states the applicable rule as follows: "A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm, (a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and (b) the defendant * * * (111) would have discovered the plaintiff's situation and thus had reason to realize the plaintiff's helpless peril had he exercised the vigilance which it was his duty to the plaintiff to exercise, and (c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff".

This is, of course, an exception to the general rule laid down in § 480.

The appellant seeks to justify the conduct of the watchman, in leaving his post at the crucial moment, on the ground that his attention was diverted by other pedestrians. That, in effect, is an admission that the appellant's safety measures were inadequate. But in any event, we think the jury might properly find, in view of the time lag, that the watchman failed to exercise proper vigilance under the circumstances, and to utilize his then existing ability to stop the train.

*Judgment reversed and new trial awarded, with costs.*