## SEARS *v.* THE BALTIMORE AND OHIO RAILROAD COMPANY

[No. 127, September Term, 1958.]

*Decided February 17, 1959.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and OPPENHEIMER, Judge of the Supreme Bench of Baltimore City, specially assigned.

*Alexander Stark,* with whom were *Clark, Smith & Prendergast* and *Alfred M. Porth* on the brief, for appellant.

*John S. Stanley* and *J. Sarsfield Sweeny,* with whom were *Fenton L. Martin* and *Hershey, Donaldson, Williams & Stanley* on the brief, for appellee.

OPPENHEIMER, J., by special assignment, delivered the opinion of the Court.

A negligence suit was filed by the appellant, the plaintiff below, against the appellee, for injuries sustained in a grade crossing collision between a truck which the appellant was driving and the appellee's locomotive. The appellant was later joined by the Indemnity Insurance Company of North America for its subrogated rights under the Workmen's Compensation Act. After the appellant presented his evidence and again at the conclusion of the entire case, the appellee's motion for a directed verdict was denied by the court. The case was submitted to the jury, which returned a verdict for the appellee. A motion for a new trial was filed, heard and overruled. The appellant contends that the court below erred in refusing to admit evidence of prior accidents involving the appellee and other motor vehicles at the same grade crossing within a few months of the accident here involved, and in refusing to instruct the jury on the appellee's duty in several respects, including the doctrine of last clear chance.

The accident occurred in the early afternoon of a drizzly

fall day. The appellant was driving a truck for his employer, the Parker Metal Decorating Company, in a northerly direction on Howard Street in Baltimore City across the tracks of the appellee railroad just south of Ostend Street. At the crossing there are four tracks of "T" rail construction which come into and cross Howard Street in a curve from around a building of the appellant's employer after branching off from the main tracks. This curvature runs generally in a southeast to northwest direction. Prior to the accident, the appellant's truck had been parked a short distance south of the tracks. There were no grade crossing signals, watchmen or warnings of any description maintained at the crossing at any time. The appellant testified that after he got into his truck, he came to a stop just before the first rail, looked to his right and to his left, saw nothing, and then proceeded slowly across the tracks. He said that the roadbed at the crossing had holes in it and was bumpy, and that he drove across the tracks at an angle to avoid being jarred. The appellee's train was then proceeding in a westerly direction on the second track from the south. The truck driven by the appellant was apparently struck just as it reached a point between the second and third set of rails. The diesel locomotive which hit the truck was approximately 56 feet in length and over 10 feet wide; it was hauling a string of 57 freight cars. At the time of the accident the front of the locomotive and the right side of the truck were in contact. The grade crossing is located in an urban manufacturing or industrial area.

The appellant testified that although the windows of the truck were partially open he heard no bell or other warning, and that as he proceeded in a northerly direction over the crossing his view was necessarily obscured by the corner of the building around which the train came. There was some corroboration of the absence of audible signals by a witness who had just stepped out of the Parker Metal Decorating Company plant on the other side of the tracks and who did not see the train until it was only a few feet from the truck. Members of the train crew testified that signals had been sounded as the locomotive passed Plum Alley—a distance of

about 180 feet from the crossing, as shown by appellant's exhibit. The engineer, who testified that his view from the right-hand side of the train was blocked by the diesel engine, said he saw nothing and knew nothing of the imminent collision until a fireman on the left side of the train pulled the emergency brake lever. The fireman testified that he first saw the truck from about 80 or 90 feet away, and that it was "moving slow * * * or standing still" very close to the southernmost track. He pulled the brake lever "at the crossing" when he detected that the appellant was moving. The brakeman on the left side corroborated this testimony that the brake was applied as soon as it became evident that the appellant was crossing the tracks. The brakes had been tested just a few minutes before the accident at a check point farther up the track and were operating properly. The testimony of members of the train crew that the train was proceeding at ten miles an hour or less just prior to the collision was uncontradicted.

All of the contentions of the appellant, except his claim that the lower court erred in refusing to instruct the jury on the doctrine of last clear chance, deal with alleged errors in the refusal to admit evidence or to instruct the jury in matters relating to the alleged negligence of the appellee. In the view which we take of the case, we do not reach questions relating to the issue of primary negligence, for, in our opinion, the lower court should have granted the appellee's motion for a directed verdict at the close of all the evidence on the ground that the plaintiff's own testimony admitted of no other rational inference but that he was guilty of contributory negligence. The appellee could not have appealed from the adverse ruling on its motion without submitting to final judgment, nor could it have appealed from the judgment entered in its favor. *Inter-City Co. v. Balto. County*, 218 Md. 80, 85. However, every interlocutory order from which no appeal has previously been taken is open to review by this Court on appeal from a final judgment. Rule 887, Maryland Rules (1957). Having renewed his motion for a directed verdict at the close of the evidence, we think it is entirely proper for the appellee to urge now, as he does, the incorrect-

ness of the court's adverse ruling thereon. See *Mullikin v. M. & C. C. of Baltimore,* 131 Md. 363, 367. See also, *Inter-City Co. v. Balto. County, supra; Bradley v. Yates,* 218 Md. 263, 268.

As we have often said, in deciding whether to take a case from a jury on the contributory negligence of the plaintiff as a matter of law, the trial court must resolve all conflicts in the evidence in favor of the plaintiff and assume the truth of all evidence and such inferences as may naturally and legitimately be deduced therefrom tending to support the plaintiff's right to recover. *Joeckel v. Baltimore Transit Co.,* 208 Md. 586, 588. In the present case, however, we find that the appellant, upon his own testimony, was guilty of contributory negligence as a matter of law.

The appellant was admittedly familiar with the crossing where the accident occurred. His place of employment, at which he had worked for a year and nine months, was just across the tracks from where the accident happened, and he knew that the tracks were in use. The accident happened in the day time, and although it was a drizzly day, he admitted that he could see to the east, from which direction the train came, to a point a little past Plum Alley, or as indicated on Plaintiff's Exhibit No. 1, a distance of almost 200 feet. He testified that he stopped a few feet south of the first track, looked to the right as well as to the left before starting to cross and saw nothing.

While it is true that the burden of proving contributory negligence is upon the defendant and the weight and credibility of conflicting evidence of the opposite parties is a jury question, nevertheless, consideration of the legal sufficiency of the evidence requires that we take account of the oft-repeated truism that if a witness says he looked and did not see when if he had looked he must have seen, such testimony is unworthy of consideration. *Balto. & Ohio Railroad Co. v. State,* 190 Md. 227, 234-235; *Baltimore Traction Co. v. Helms,* 84 Md. 515, 526; *Balto. & O. R. Co. v. Bruchy,* 161 Md. 175, 179. By the plaintiff's own testimony as to the extent of the visibility just prior to his crossing the tracks and as borne out by reference to his own exhibit drawn to

scale, no other rational inference is possible but that he either did not look before starting across the tracks, as he claimed to have done, or else he saw the train slowly approaching and thought he could cross the tracks in front of it. In either event, he was guilty of contributory negligence as a matter of law. It is the established law in this State that it is negligence *per se* for a person to attempt to cross railroad tracks without first looking and listening for approaching trains. *Balto. & O. R. Co. v. Bruchy, supra,* at 178; *Balto. & Ohio Railroad Co. v. State, supra,* at 234. This Court has recognized the applicability of this rule even within the city limits when the tracks are of "T" construction and are separated from the traveled way. *Crawford v. Baltimore Transit Co.,* 190 Md. 381, 387.

The appellant testified that after stopping just south of the tracks, as he started to cross them his view to his right was progressively diminished. The front portion of the truck may have partially obstructed his view, and his being in the driver's seat on the left side of the truck may have further interfered with his vision of the tracks to the right as he was proceeding over the crossing. However, these factors did not lessen his obligation not only to look and listen before starting across the intersection, but to keep on looking as he proceeded across. *United Rwys. Co. v. Sherwood Bros.,* 161 Md. 304, 310; *Joeckel v. Baltimore Transit Co. supra,* at 591. In view of the stipulated facts as to the physical characteristics of the crossing and the appellant's own testimony, it overstrains credulity to believe that if he had kept on looking he would not have seen the approaching train in ample time to have stopped before the accident.

The appellant did not proceed directly across the tracks, but went at an angle to avoid being jarred by the bumpy condition of the roadbed. He knew that as he was crossing the tracks his view to the right was more and more impaired. He angled across the tracks, not of necessity but to avoid being jarred; his doing so, without stopping, looking and listening "at the point where it would have been effective for his safety," was in itself negligence. See *Crystal v. Balto. & Bel Air Ry. Co.,* 150 Md. 256, 263.

Even though we hold the appellant to have been guilty of contributory negligence as a matter of law, the case would have been a proper one for the jury, if, as he contends, the last clear chance doctrine were applicable; for that doctrine presupposes contributory negligence. *Joeckel v. Baltimore Transit Co., supra.* In our opinion, however, on the undisputed facts in the case and the appellant's own testimony, there was not sufficient evidence to make the last clear chance doctrine proper for the jury's consideration.

In *State, Use of Taylor v. Barlly,* 216 Md. 94, 103, we restated the Maryland rule as to last clear chance as follows:

> "It is implicit in the rule that both the plaintiff and defendant were negligent. The doctrine presupposes a perilous situation, created or existing through the negligence of both the defendant and the plaintiff. *State v. Wash., B. & A. R. Co.,* 149 Md. 443, 459, 131 A. 822. It assumes that there was a time after such negligence has occurred when the defendant could, and the plaintiff could not, by the use of the means available avert the accident. *United Rwys. Co. v. Sherwood Bros.,* 161 Md. 304, 310, 157 A. 280. Consequently, this Court has held on many occasions that, in order for the rule to apply, the defendant's negligence must have been sequential, and not concurrent. *Legum v. State, supra,* 167 Md. 355; *Baltimore & Ohio R. Co. v. Leasure, supra,* 193 Md. 532; *West v. Belle Isle Cab Co.,* 203 Md. 244, 252, 100 A. 2d 17; *Martin v. Sweeney,* 207 Md. 543, 552, 114 A. 2d 825; *Joeckel v. Baltimore Transit Co.,* 208 Md. 586, 592, 119 A. 2d 373; *Meldrum v. Kellam Distr. Co., supra; Fowler v. De-Fontes,* 211 Md. 568, 575, 128 A. 2d 395."

In view of what has been said above, there was no evidence sufficient to go to the jury in the present case to support a finding that, assuming the appellant's negligence, there was a time after such negligence when the appellee could have averted the accident and the appellant could not. Both the train and the truck were moving at the time of the impact,

and it is clear that if the appellee was negligent, its negligence was concurrent and not sequential. We have said that in order for the rule to be applicable "[s]omething new, or independent, must be shown, which gave the defendant a fresh opportunity to avert the consequences of his original negligence and the plaintiff's contributory negligence." *Peregoy v. Western Md. R.R. Co.*, 202 Md. 203, 211. Even though the operator of the appellee's locomotive saw the appellant's truck standing or moving slowly at a point close to the tracks, he had the right to assume that the appellant would stop before he reached the track upon which the train was proceeding. *State v. Wash., B. & A. Ry. Co.*, 145 Md. 285, 290. The appellant did not present any evidence to support an inference that the appellee had a "fresh opportunity" to avert the consequences of his own contributory negligence in driving onto the tracks.

In the view we take of the case, we do not pass upon the questions raised as to whether the charge of the court below sufficiently explained the doctrine of last clear chance to the jury, and, if it did not, whether the appellant took proper exception as required by Rule 554 d and e, Maryland Rules. Under the Maryland decisions, there was no evidence which could have made the last clear chance doctrine applicable.

*Judgment affirmed, with costs.*