CONGRESSIONAL COUNTRY CLUB, INC. *v.*
BALTIMORE AND OHIO RAILROAD CO.

[No. 85, October Term, 1949.]

534

536

*Decided February 10, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Vivian V. Simpson* and *Joseph B. Simpson,* with whom were *Simpson & Simpson* and *Cornelius H. Doherty* on the brief, for the appellant.

*C. W. Prettyman* and *D. E. Betts,* with whom was *Stephen Ailes* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This case grew out of an accident at the Dorset Avenue crossing of the Baltimore and Ohio Railroad in Montgomery County, in which a motor bus, owned and operated by the Congressional Country Club, Inc., was struck by a train. Two of the passengers in the bus were killed and one was injured. It was stipulated (with reservations as to materiality) that at the time of the accident these passengers were residents of Washington, D. C., employed by the Club, and were being transported from the District line to their place of employment in Montgomery County at the employer's expense and as a part of their contract of employment. Two of them were employed as maids and one as a houseman at the Club, which is a corporation resident in Montgomery County and not doing business, or authorized to do business, in the District. At the time of the accident the Club had a policy of insurance on file with the State

Industrial Accident Commission to compensate employees killed or injured in extra-hazardous employment within the meaning of the Workmen's Compensation Act, and subsequently filed reports of the accident with the Commission, at least in the case of the deceased employees. No joint election was ever filed by the Club or any of its employees, and it does not appear that claims were filed by these employees or their personal representatives.

The personal representatives of the deceased passengers, and the injured passenger, filed suits in the District of Columbia against the Railroad Company. After notice to the Club of the pendency of these suits and after requests for participation in the defense and in settlement negotiations had been declined by the Club, the Railroad Company settled the suits for the total sum of $18,500 and obtained general releases. Thereupon, the Railroad Company sued the Club in Montgomery County in separate counts for indemnity or contribution. By special plea and subsequent pleadings, in addition to its general issue plea, the Club raised the issue that it was a conforming employer and that its liability under the Workmen's Compensation Act was exclusive. The Railroad Company, in its pleadings, denied that the Club was a conforming employer and asserted that these employees were not covered by the Act.

At the trial of the case the court sustained an objection to a question put to an agent of the Hartford Accident Indemnity Company, as to whether that Company had issued a workmen's compensation insurance policy "on the employees at the Congressional Country Club". The appellant made a proffer that the witness would testify that all of its employees were covered, and that the premium on the policy was paid. The court said it was undisputed that the work of the employees in question at the Club was not extra-hazardous, but the dispute was as to whether "the riding on the bus as an incident to a non-hazardous employment would bring" them "within the purview of the Act." The court also

excluded the stipulation as to the fact that a policy had
been filed with the Accident Commission, on the ground
that it was immaterial, nor did he allude to the matter
in his charge to the jury, which was full and explicit on
other points.

The appellant likewise complains of the court's ruling
in admitting in evidence the releases obtained, with the
amounts stated therein. The final question raised is
as to the Court's action in instructing the jury on the
doctrine of last clear chance as applied to the appellant,
and refusing to instruct on last clear chance as applied
to the appellee. The jury's verdict was for one-half of
the amount of the settlement, i.e., for contribution and
not for indemnity.

The effect of the court's rulings as to the insurance
policy was to remove that question from the jury's con-
sideration and decide as a matter of law that, even if
the proffered or stipulated facts were admitted, they
would not support the defense raised by the special plea.
The appellee does not deny that if the employees in
question had been regularly engaged in extra-hazardous
employment and injured or killed in an accident arising
out of or in the course of that employment, and the em-
ployer had provided insurance coverage for them, this
would have been a complete defense, not only in a suit by
the employees, but in a suit by a joint tort-feasor for in-
demnity or contribution. *Salvuca v. Ryan & Reilly Co.*,
129 Md. 235, 98 A. 675; *Baltimore Transit Co. v. State*,
183 Md. 674, 39 A. 2d 858, 156 A. L. R. 460; *Standard
Wholesale Phosphate & Acid Works v. Rukert Terminals
Corp.*, 193 Md. 20, 65 A. 2d 304. The appellee likewise
concedes that the employees in question do not fall within
the exception as to "domestic servants" under section
67(3), Article 101 of the Code. *Barres v. Watterson Hotel
Co.*, 196 Ky. 100, 244 S. W. 308; *Savoy Hotel Co. v.
London County Council*, 1 Q. B. 665. *Horowitz, Work-
men's Compensation* (1944 Ed.) p. 209. The appellee
also seems to concede that the injuries, occurring in the
course of free transportation to work, arose out of and

in the course of the employment. *Harrison v. Central Construction Company*, 135 Md. 170, 108 A. 874; 137 Md. 256, 112 A. 627. *Cf. Heaps v. Cobb*, 185 Md. 372, 383, 45 A. 2d 73, and cases cited. But it is earnestly contended that it is a prerequisite to liability in any case that the employee must be engaged in extra-hazardous employment, and that these employees were not so engaged. In the *Harrison* case *supra*, it was said, (135 Md. 176, 108 A. at page 876: "Before a claimant is entitled to compensation he must show, *First* that he was engaged in an extra-hazardous employment, and *secondly*, that the injury arose out of and in the course of the employment. Both conditions must be shown."

Section 67 (1) defines "extra-hazardous" to mean "a work or occupation described in Section 20." Section 20 contains a list of 47 extra-hazardous occupations, some of which are in fact hazardous, others, such as those of salesmen and musicians, not necessarily so. Subsection (41) covers "the operation, otherwise than on tracks, * * * of cars, trucks, wagons or other vehicles." Subsection (41A) covers, in a more limited way, resident "truckdrivers, helpers, mechanics, loaders and other persons employed * * * in or about the operation of trucks, wagons or other vehicles." The final subsection covers "all extra-hazardous employments not specifically enumerated herein, and * * * all work of an extra-hazardous nature." Section 67(2) defines "employer" as one "employing workmen in extra-hazardous employments." Section 67(3) defines "employee" as one "who is engaged in an extra-hazardous employment in the service of an employer, carrying on or conducting the same upon the premises or at a plant, or in the course of his employment away from the plant of his employer."

In *Mayor and City Council of Baltimore v. Trunk*, 172 Md. 35, 40, 190 A. 756, 759, it was said that an orderly in a hospital, "if injured within the scope and course of his employment, would not be entitled to compensation merely because he was an employee, as would be the case if the hospital were either an industrial en-

terprise or definitely included in the operation of the Compensation Law. *Boteler v. Gardiner-Buick Co.*, 164 Md. 478, 481, 165 A. 611. Hence, if the husband of the claimant on this record would have been entitled to compensation, it is because the work in the hospital of the claimant's husband is 'work of an extra-hazardous nature'." It was held that his work was not extra-hazardous within the meaning of the Act.

In *Mattes v. Baltimore*, 180 Md. 579, 582, 26 A. 2d 390, 391, it was held that a janitor at a municipal airport, admittedly an extra-hazardous enterprise, was not entitled to compensation. Although there was testimony that he occasionally filled gasoline tanks or pushed planes into hangers, the court said he was "predominantly" a janitor and was "working as a janitor when he was hurt." The court noted that in some states all employees in extra-hazardous enterprises were covered, but under the Maryland Statute "to be included, it seems, the workman must have been employed incidentally to the promotion or prosecution of the hazardous work". The decision was criticized in 8 Md. L. R. 158.

In *Hart v. Sealtest, Inc.*, 186 Md. 183, 192, 46 A. 2d 293, 297, it was said that the work of a librarian, employed in an experimental laboratory to furnish written material to the technicians, "whether hazardous or nonhazardous, was incidental to the promotion or prosecution of a hazardous work". It was held that she was entitled to compensation for injuries due to chemical fumes.

In the case at bar it is undisputed that the operation of the Club, as such, was not an industrial enterprise and not of an extra-hazardous nature in law or in fact. Likewise, it is clear that the regular duties of maids and a houseman are not extra-hazardous in law or in fact. The appellant contends, however, that since the Act brings the operation of a bus within the category, the coverage should be extended to employees riding therein. We may assume that the driver was covered, (*Thistle Mills v. Sparks*, 137 Md. 117, 111 A. 769), if not under subsection (41), then under subsection (41A). But we

find nothing in the Act to warrant an extension to riders. The maids and houseman had nothing to do with the operation of the bus, and their employment was not incidental to the promotion or prosecution of that work.

We may assume that their passive action in riding in the bus was in the course of their employment, and, if their principal employment had been within the Act, they would have been entitled to compensation for injuries sustained away from the plant. But we find nothing in the *Harrison* case, or any of the other cases to which we have been referred, to indicate that the common risk of traffic accidents is covered, except where incidental to employment of an extra-hazardous nature. The primary purpose of the Act, of course, is to cover industrial accidents, and in that limited class of cases, to substitute an absolute, but limited, liability regardless of fault, for the common-law liability of an employer for negligence.

The appellant also contends that the fact that the employer provided a policy broad enough to cover these employees was enough to bring them within the Act. Section 66 of Article 101 provides that "in any proceeding for the enforcement of a claim for compensation * * * if * * * the insurance carrier * * * has accepted * * * a premium or premiums on compensation insurance * * * with respect to such employee, such * * * carrier shall be estopped from asserting, as a defense to such claim, that such employee * * * was not engaged in an extra-hazardous employment * * *." We think, however, that the estoppel cannot be construed to run against an employee, so as to limit his recourse to common-law remedies, nor to a third party asserting a derivative right of contribution against a negligent employer. *Cf. Keeney v. Beasman*, 169 Md. 582, 595, 182 A. 566, 103 A. L. R. 1515.

This section should be contrasted with Section 14, which provides that "if an employer, besides employing workmen in extra-hazardous employment within the meaning of this Article, shall also employ workmen in employments not extra-hazardous, the provisions of this

Article shall apply only to the extra-hazardous employ-
ments within the meaning of this Article and the work-
men employed therein, except as provided in Section
31, of this Article."

Section 31 provides that "any employer, his employee
or employees engaged in works not extra-hazardous with-
in the meaning of this Article may, by their joint election,
filed with the Commission, accept the provisions of this
Article and such acceptances when approved by the Com-
mission, shall subject them to the provisions of this
Article to all intents and purposes as if they had been
originally included in its terms." It is conceded that no
joint election was filed in the case at bar.

In regard to the admission of the releases, the ap-
pellant makes the point that they were not approved by
the Commission, but since we hold that the employees
were not covered, the objection is without merit. It is
admitted that the releases extinguished the common-law
right of action of the employees against the Club. We
may assume that the settlement was for a sum less than
the potential value of the claims, so that the appellee was
not harmed by admission of the releases, since recovery
was limited to the amount of settlement. The appellant
declined to participate in the negotiations, and did not
produce any evidence to show that the settlement was
unreasonable or made in bad faith. Even if not con-
clusive, the releases were admissible. *Baltimore & Ohio
R. R. Co. v. Howard County*, 113 Md. 404, 77 A. 930;
*Consolidated Coach Co. v. Burge*, 245 Ky. 631, 54 S. W.
2d 16, 85 A. L. R. 1086; *Cf.* Code, Article 50, section 22.

The only objections to the charge were as to the
court's submitting to the jury the question of last clear
chance on the part of the bus driver, and refusing to
charge as to last clear chance on the part of the Railroad
Company. Evidence was produced to show that a freight
train with 17 loaded cars and a caboose backed over
the crossing at a speed of four miles per hour, without
stopping and posting a flagman as required by a rule
of the Company. At that speed the train could have
been stopped in a distance of about 20 feet. The bus

driver did not see the train until he was too close to the tracks to stop, and then tried to cross ahead of it, although the train could have been seen when he was at a distance of 75 feet from the tracks, and was blowing for the crossing. The engineer saw the bus at some distance from the tracks, then it went "out of sight, I thought it had stopped, and then suddenly it shot out across the tracks," and he put on the emergency brakes. The conductor, on the caboose, saw the bus slow down "like he was going to stop, then it started off and pulled right up in front of us."

It is unnecessary to consider whether there was a sufficient basis in fact for the court's instruction, for the jury did not find that the action of the bus driver was the last negligent act, but on the contrary that the negligence of both parties was concurrent. We think the court properly refused to instruct as to last clear chance on the part of the Railroad Company, since there was no evidence to show that the train could have been stopped so as to avoid the accident, *after* the train crew and engineer knew, or by the exercise of reasonable care should have known, that the bus was in a position of "helpless peril." *Baltimore and Ohio Railroad Company v. Leasure,* 193 Md. 523, 533 69 A. 2d 248, 252. As we said in that case, 69 A. 2d at page 251: "the defendant's negligence must have been sequential, and not concurrent for the doctrine of apply." In *Jackson v. Forwood,* 186 Md. 379, 387, 47 A. 2d 81, 85, we said that the doctrine "can never be invoked when the plaintiff's [or the deceased's] own act is the final negligent act."

Finding no reversible error in any of the rulings of the court, the judgment will be affirmed.

*Judgment affirmed, with costs.*