O'KEEFE, ETC. *v.* BALTIMORE TRANSIT CO.

[No. 62, October Term, 1952.]

346

*Decided January 14, 1953.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Samuel S. Smalkin,* with whom were *Ginsberg & Ginsberg* on the brief, for appellant.

*A. Frederick Taylor* and *Hamilton O'Dunne* for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment entered on the verdict of the trial judge, sitting without a jury.

On August 13, 1948, the Baltimore Transit Company, appellee, entered a suit for contribution against the

appellant as a joint tort-feasor. The declaration, for the purposes of this case, alleged that on about July 14, 1947, three suits were entered: one suit by Mildred Ailstock, a passenger in a taxicab owned by the defendant and operated by his agent; one suit by T. Bayard Williams, Administrator of the Estate of Anthony De Luca, deceased, who had likewise been a passenger in the taxicab of the defendant; and one suit by Julia De Luca, widow of Anthony De Luca, deceased, all against the Baltimore Transit Company, as well as the two operators of its street car, and against the defendant herein, Arthur O'Keefe, and his driver or operator, William Turner. The plaintiffs in those actions sought to recover damages in the total amount of $66,000.00 for the death of Anthony De Luca, for his medical and hospital expenses and conscious pain and suffering; and for injuries to his daughter, Mildred Ailstock, which claims arose out of an accident which occurred on February 18, 1947, about 12:23 A.M., when a taxicab owned by the defendant, O'Keefe, and operated by his agent, William Turner, "in a careless, reckless and negligent manner in an easterly direction from south across the open T rail double tracks of the Transit Company known and designated as a railroad crossing, where St. Helena Avenue crosses said tracks by smooth pavement from Dundalk Avenue when the street car of the plaintiff, The Baltimore Transit Company, was in plain view approaching said intersection along the railroad right-of-way which street car was seen or should have been seen by the defendant, O'Keefe's Agent, servant 'or employe, Turner, when he was in a place of safety, or in time to have removed his taxi-cab from the tracks of the Transit Company at the railroad crossing, so that by reason of his said failure so to do, a collision occurred and one of the passengers in said taxi-cab, Anthony DeLuca was killed and his daughter, Mildred Ailstock, the other passenger was injured. Subsequently, on or about the 19th day of June, 1948, before said suits were

called for trial, said suits were settled in full by this plaintiff by payments before judgment as follows:

1. T. Bayard Williams, Administrator, $1,500.00
2. State of Maryland, to use of Julia DeLuca, wife of Anthony DeLuca, deceased $13,500.00
3. Mildred Ailstock $350.00

or total of $15,350.00 and proper Releases were taken so that the liability of the defendant herein to the aforesaid plaintiffs in the three suits indicated was extinguished in full by said settlement as well as to protect this plaintiff in its claim for contribution under the applicable Joint Tort Feasors Act of 1941 and amendments thereto. WHEREFORE, the Plaintiff says that the accident out of which said injuries and settlements arose was caused and contributed to by the negligence of the defendant, O'Keefe, his agent, servant and employe, and under said joint Tort Feasor Act as amended the defendant has become and is liable to the plaintiff as a joint tort feasor for his proportion of fifty *per centum* of the joint liability in damages in said respective cases and costs of suit. WHEREFORE, this suit for contribution under the joint tort-feasor's act is brought and the plaintiff claims $16,000.00 for damages." The appellant demurred generally to the declaration. After the demurrer was overruled and general issue pleas filed, the case was tried by the trial judge, without a jury, and from a judgment for $7,675.00 rendered for the plaintiff, appellee here, and against the defendant and appellant, the appeal comes to this Court.

The appellant contends primarily that the appellee, Baltimore Transit Company, could not without the consent or participation of the appellant, O'Keefe, settle out of court a case then pending against both of these parties and secure a release from the plaintiffs in that case and then, while that case still remains pending institute an independent action for contribution against the appellant, O'Keefe. As alleged in the declaration on June 19, 1948, before the suits were called for trial, they were settled in full by the appellee here by payment

before judgment. Releases were taken so that the liability of the appellant and appellee were extinguished in full. After taking these releases, and before the releases were filed in the pending cases, the action of contribution was filed by the appellee. It is now provided by Chapter 344, Section 22 of the Acts of 1941, Article 50, Section 21, 1951 Code: "(Right of Contribution; Accrual Pro Rata Share.) (a) The right of contribution exists among joint tortfeasors. (b) A joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his *pro rata* share thereof. (c) A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement." Appellant contends that because of the last sentence of the Act of 1941, Chapter 344, Section 27 (c), Article 50, Section 26 (c), 1951 Code, this claim of the appellee for contribution could not be brought in a separate and independent action. The Act of 1941, Chapter 344, Section 27 (c), and hereinafter referred to as Section 27 (c), provides: "A pleader may either (a) state as a cross-claim against a co-party any claim that the co-party is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant; or (b) move for judgment for contribution against any other joint judgment debtor, where in a single action a judgment has been entered against joint tortfeasors one of whom has discharged the judgment by payment or has paid more than his *pro rata* share thereof. If relief can be obtained as provided in this subsection no independent action shall be maintained to enforce the claim for contribution." Assuming that this Act was in point of time effective in the case at bar, it is plain that Section 27 (c) (a), *supra,* applies at the beginning of the proceedings and during the pleadings and that Section 27 (c) (b) applies where the judgment has been entered. In the instant case settlement was made and

releases secured after the pleadings were filed and before judgment was entered. Therefore, relief could not have been obtained by the appellee here against the appellant for contribution under Sections 27 (c) (a) or 27 (c) (b) and the last sentence of Section 27 (c) does not apply to the instant case. Such a contingency as has now arisen is not provided for in Section 27 (c) *supra*.

The General Rules of Practice and Procedure III Joinder of Parties and Claims; Third Party Practice were adopted by this Court November 27, 1947, effective January 1, 1948. Rule 7 thereunder, provides that those rules supersede Code, Article 50, Section 26, 1951 Code, Page 4873, 1951 Code. As hereinbefore set forth, although the original action against the appellee and appellant here was instituted on July 17, 1947, settlement of the three cases was not made by the appellee and releases secured until June 19, 1948, when its right of contribution arose. The effect of these new Rules, *supra,* was not to obliterate existing substantial rights, but to effect only the procedure and remedies for the enforcement of those rights and the new Rules therefore certainly apply to future actions. *Ireland v. Shipley,* 165 Md. 90, 98, 166 A. 593. *Kelch v. Keehn,* 183 Md. 140, 36 A. 2d 544. Compare *E. Coast Lines v. M. & C. C. of Balto.,* 190 Md. 256, 279, 58 A. 2d 290, 2 L. R. A. 2d 386. There is no requirement in these rules that an action for contribution must be brought in the original action and cannot be brought in an independent action. Of course, one purpose of the new Rules is to avoid multiplicity of suits. By bringing this independent action it was not necessary to proceed further with the three pending suits.

It was said in the case of *Consolidated Coach Corporation v. Burge,* 245 Ky. 631, 54 S. W. 2d 16, at page 18, 85 A. L. R. 1086: "The rendition of judgments against the Consolidated Coach Corporation and their payment were not, under section 484, Ky. Statutes, a prerequisite and condition precedent to its right of action against Burge to enforce contribution as against him. The

act of payment of conpensation in the satisfaction of judgment or compromise to the injured passengers by the Consolidated Coach Corporation, if their injuries were the direct and proximate result of the joint and concurrent negligence of the drivers of the bus and the truck, fixed and determined its right of action against Burge. However, not being a party to the compromise settlements of the Consolidated Coach Comporation with the passengers, he is not bound thereby. But if the amounts were in good faith paid in pursuance to compromises, made honestly and in good faith, they are *prima facie* correct, with the legal right in Burge to offer evidence tending to show the nonexistence of any fact essential or necessary to establish he was not liable at the time to the injured passengers, or that the compensation that was paid by the Consolidated Coach Corporation to either or all of them, was not paid in good faith, or not in accordance with a compromise, or was unreasonable or excessive. * * * The action must be tried so far as his liability is concerned as if this was an action by the passengers against him. *Verhelst Construction Co. et al. v. Galles,* 204 Wis. 96, 235 N. W. 556. The measure of recovery is one-half of the amount paid to each of the passengers by the Consolidated Coach Corporation in accordance with its compromises with them; in no event an amount in excess of the one-half of the total sum paid by it to them. The burden rests upon Burge to show that the compromises were not made honestly and in good faith, or that the amounts paid thereunder were unreasonable or excessive." See also *Employers Mutual Casualty Company v. Chicago St. P. M. & O. Ry. Co.,* 235 Minn. 304, 50 N. W. 2d 689, 693; *Deatley's Adm'r v. Phillips,* Ky., 243 S. W. 2d 918.

Appellant further contends that the Baltimore Transit Company, appellee, did not sustain its burden of proof and show that the appellant was guilty of such negligence as entitled it to contribution. Anthony DeLuca and his daughter, Mildred Ailstock, entered appellant's taxicab

on Dundalk Avenue at a cab stand near the intersection with St. Helena Avenue. There, Dundalk Avenue, running north and south, is a four lane boulevard with two lanes for traffic separated by the right of way owned by the Baltimore Transit Company, appellee, on which there were two sets of open "T" rails constructed. At the Dundalk Avenue intersection with St. Helena, which runs east and west, the public crossing is paved and is flush with the regular road bed. There was no automatic traffic control signal in operation at this well lighted intersection on the night of the accident, although normally this is in operation. The driver of the taxicab with the two passengers started south on Dundalk Avenue, made a left turn into St. Helena Avenue to get into the north bound lane on Dundalk Avenue and proceeded to cross the street car tracks.

Mr. Woodrow Millard, at the time of the accident, the student motorman of the street car which was proceeding north on Dundalk Avenue, testified that the block between St. Helena Avenue where the accident occurred and Baltimore Avenue, which is the next block south, is quite a long straight block. He said the taxicab stopped momentarily on the south bound tracks when the street car was approximately sixty feet distant and he thought it was going to stop finally. However, it proceeded and stopped with its rear on the north bound tracks when the street car was thirty feet distant. He then cut the power and threw the street car into emergency. It drifted on down and struck the right rear fender of the cab and stopped about the length of the entire street car beyond the intersection. Mr. John O. Robinson, Jr., testified that on the night of the accident he was on the platform of the streetcar just about over Mr. Millard's left shoulder, serving as his instructor, and that this was the first day that Mr. Millard had been with him on this particular streetcar. He said when the streetcar was about one hundred feet from the intersection at St. Helena Avenue he saw with the headlights the taxicab "sitting right between the

southbound track". Millard was ringing the bell and blowing the whistle and the streetcar was proceeding approximately at ten miles an hour. When the streetcar was about sixty feet distant the taxicab "made a jump from the southbound track" and stopped, when the streetcar was thirty feet distant, with its right rear fender and the rear wheels on the northbound track. After the accident the cab was sitting more or less on a southeasterly angle. The impact had been on the right rear fender of the cab. He further said that proceeding at five miles an hour it would take approximately forty to sixty feet to stop the two streetcars under good conditions, and the conditions were good that evening.

Mrs. Mildred DeLuca Ailstock, a passenger in the cab, testified that she was on the back seat of the cab behind the driver. The driver made a lefthand turn at the corner and stopped on the southbound track. Traffic was coming north on Dundalk Avenue and the cab driver pulled over on the northbound track and stopped because of the automobile traffic and the streetcar was not close enough to interfere with the cab at that time. The driver of the cab had gone as far over the northbound track as he could, without colliding with the automobile traffic going north on Dundalk Avenue. She first saw the streetcar at Baltimore and Dundalk Avenues when the cab was on the southbound track. She looked again when the cab had gone over to the northbound track and the streetcar was then near the Skyview Restaurant. She said the cab did not move from the time she saw the streetcar at the Skyview Restaurant until she saw the big headlights of the streetcar just before the cab was struck and she became unconscious. Robert David Shreck, a passenger on the streetcar, was sitting on the wooden seat on the motorman's platform. He saw the cab on the south track when the streetcar was in front of Eddie's or in between Eddie's and Baltimore Avenue. He noticed the motorman made a motion to stop the streetcar when the cab was on the northbound track. The streetcar was then approximately a pole

length from the crossing. Corporal Charles E. Richardson testified that he viewed the scene after the accident and the first car of the streetcar train had completely passed the crossing. Sand had been dropped 55 feet from the point of impact.

William R. Turner, the driver of the cab, testified that his passengers entered the cab at Dundalk and St. Helena Avenues where a cab stand is located. He went south about ten or fifteen feet and then made his left turn. As he entered the cab the streetcar was then south of Baltimore Avenue near the Dundalk carstop. He paused but did not stop on the southbound track. After he crossed the southbound track, he stopped on the northbound tracks because of several cars proceeding north on Dundalk Avenue. The back part of his cab was on the northbound track. He saw that the streetcar was coming down the northbound track "pretty fast" so he tried to edge his cab off the track into Dundalk Avenue to prevent hitting any cars driving north and to clear his cab from the track. He said the streetcar was coming past the shack and "I kept edging the car off, and edging it, and watching the streetcar and the traffic at the same time and I was moving my head back and forth and at the time the impact took place I thought perhaps I might have had my car cleared, but evidently I did not, but at the same time my motion was still forward." He said after the accident the streetcar was approximately a car and a half length beyond the cab. On cross-examination he admitted without objection that when he was forced to stop on the northbound track because of oncoming automobile traffic he knew that there was a streetcar moving toward him. As the streetcar approached he moved his cab forward to get out of the way of the streetcar and finally reached a place before the collision where he thought he was safe. He said he remained on the northbound track about two minutes. He said, without objection, that as far as he knew there was nothing back of him. He further testified without ob-

jection, "Q. (Mr. Taylor) In looking in your rear vision mirror you see what is directly behind you? A. Yes, sir. Q. In seeing what is coming south you only have to turn your head to the left? A. That is true. I would have turned my head like this to see. Q. In that two minutes you could have done that? A. You can misjudge in looking at such a manner. Q. We are not talking about judgment. We are asking you, you could have in a fraction of a second turned your head to the left and seen any traffic approaching the north, couldn't you? A. I guess I could. Q. But you did not? A. I didn't."

John Schock testified that he was walking south on Dundalk Avenue and saw the cab facing east on the northbound car tracks. Traffic was heavy going north on Dundalk Avenue. The streetcar was then a little to the north of Eddie's Super Market. He saw the accident and the poles at the intersection were lighted. There was also testimony that St. Helena Avenue is 642 feet from the south end of Eddie's Super Market and 540 feet from the north end. Jack H. Cappelli testified that he was driving an automobile south on Dundalk Avenue going to the Skyview Restaurant which is located approximately one-half block north of Eddie's. He saw the cab facing east in the northbound tracks and at that time the streetcar was at the Skyview Restaurant. The streetcar, going fast with its headlight burning, ran into the cab. On cross-examination he testified that the taxicab was as far out in the intersection as it could go without hitting northbound automobile traffic and that the cab did not move from the time he saw it until it was hit. On cross-examination he further testified that he was one hundred and fifty to two hundred feet from the intersection at St. Helena Avenue, when he first observed the situation. There was nothing else in the intersection. There was a long line of traffic going north which prevented the cab from going into Dundalk Avenue. There was oncoming traffic as far down as the Skyview Restaurant. Clifford E. Testerman

testified that he was a passenger in a car going south on Dundalk Avenue toward Baltimore Avenue. They stopped at Baltimore Avenue to let the streetcar pass. They then crossed the tracks and went north following the streetcar. Although they were traveling between thirty and thirty-five miles per hour they did not get closer than one hundred feet to the streetcar and did not catch up to it as it did not check its speed.

Mr. W. Frank Reed testified that he has been a member of the Bar since 1915 and has been Court Claim Agent for the Baltimore Transit Company for thirty-five years and during that time had handled quite a number of death claims. He said he was familiar with the claims in this case. After many consultations with the counsel, both for appellant and for appellee, the appellee thought it advisable to settle the claims and take releases for all the defendants for $15,350.00. He said counsel for the appellant was kept advised at all times during the negotiation period, even after counsel for the plaintiffs had indicated for what amount they would settle. Demands were made upon counsel for appellant to contribute toward that settlement but the demands were refused because appellant did not have any money and his insurance company was bankrupt. After consultation with counsel for appellee it was considered that the settlement was fair and satisfactory and the amounts indicated in the declaration here were paid and releases taken protecting all parties involved in the suits. He also gave evidence as to Mr. and Mrs. DeLuca's age, their joint expectancy, Mr. DeLuca's income, health, pain and suffering after the accident, and funeral expenses, and Mrs. Ailstock's injuries; upon all of which the settlement was based. Mr. Arthur G. Kahl, claim manager for a large insurance company in Baltimore, testified that he had been a member of the Bar since 1932 and among the claims adjusted by him, were about one hundred and fifty death claims. He said he was familiar with the facts in the instant case and had been given a digest of the entire case by the Baltimore

Transit Company. He produced that digest in court and read it. He said in his opinion the settlements were fair. Mr. Charles Owens Mount, a member of the Bar for twenty-six years, assistant manager of a large insurance company, and an associate with a leading law firm in Baltimore, stated that he had had experience in the defense of claims for a period of over nineteen years. He said he had reviewed the file in this case and the same memorandum which Mr. Kahl read in court. From his knowledge of the facts, his experience in like cases, and from the testimony of Mr. W. Frank Reed, which he had heard in court, he said he considered the settlement of these cases to be fair. Mr. Douglas Johnson, claim manager of the Baltimore office of a large insurance company for six years, and engaged in claim work for seventeen years, testified that he had had experience in the settlement of at least seventy-five death claims. He said he had familiarized himself with the details of these cases and from his experience and the testimony of Mr. W. Frank Reed, in his opinion the settlement was fair.

It is, of course, admitted that the Baltimore Transit Company was negligent. The appellant contends that even if it can be inferred that the cab driver was guilty of some sort of negligence in stopping on the northbound tracks, the last clear chance was with the motorman of the streetcar who, by the exercise of ordinary care, could easily have observed the cab on the northbound tracks in time to have stopped the streetcar and prevented the accident. The case of *Congressional Country Club v. Baltimore & O. R. Co.*, 194 Md. 533, 71 A. 2d 696, grew out of an accident in which a motor bus, owned and operated by the Congressional Country Club, Inc., was struck by the train of the Baltimore & Ohio at a grade crossing and two employees of the Club were killed and one injured. Suits were filed against the Railroad Company. After notice to the Club of the pendency of these suits and after request for participation in the defense and in settlement negotiations

had been declined by the Club, the Railroad Company settled the suits for the total sum of $18,500.00 and obtained general releases. Thereupon, the Railroad Company sued the Club in separate counts for indemnity or contribution. One of the contentions was that the court should not have submitted to the jury the question of last clear chance on the part of the bus driver, and refused to charge as to the last clear chance of the Railroad Company. This Court said the following in that case, 194 Md. at page 545, 71 A. 2d at page 700: "We think the court properly refused to instruct as to last clear chance on the part of the Railroad Company, since there was no evidence to show that the train could have been stopped so as to avoid the accident, *after* the train crew and engineer knew, or by the exercise of reasonable care should have known, that the bus was in a position of 'helpless peril.' *Baltimore and Ohio Railroad Company v. Leasure*, 193 Md. 523, 533, 69 A. 2d 248, 252. As we said in that case, 193 Md. at page 532, 69 A. 2d at page 251: 'the defendant's negligence must have been sequential, and not concurrent for the doctrine to apply.' In *Jackson v. Forwood*, 186 Md. 379, 387, 47 A. 2d 81, 85, we said that the doctrine 'can never be invoked when the plaintiff's [or the deceased's] own act is the final negligent act.' " Here, it could certainly have been found that the cab driver could have backed off the track and that the motorman of the streetcar had no reason to believe that he would not do so.

The trial judge found that the accident was due to the joint negligence of the operator of the streetcar of the Baltimore Transit Company and the driver of the cab of the appellant. He said "* * * the Court finds that the action of the cab driver in moving from a position of safety on to the street car tracks and stopping thereon at a time when the street car was in sight moving towards him, and in remaining on the tracks when the evidence showed he had ample time to get off them before the collision, was negligence." The trial judge also found that the amount of settlement

was fair in view of the injuries sustained. We cannot say, in reviewing both the law and the evidence, that the trial judge was clearly erroneous in reaching his conclusions. Rule 9 of III Trials, General Rules of Practice and Procedure, Pages 4882 and 4883, 1951 Code. In *Taylor v. Western Maryland Railway Company,* 157 Md. 630, 147 A. 531, when the plaintiff was asked if he thought he had stopped his car sufficiently far from the northbound track not to be struck by the train coming on that track, he replied: "Positively". This Court there said 157 Md. at page 633, 147 A. at page 533: "From these facts we have no difficulty in reaching the conclusion that the plaintiff by his own negligence contributed to the accident resulting in the injuries and loss of which he complains." The Court there held that the doctrine of last clear chance did not apply. In *United Railways v. Sherwood Brothers,* 161 Md. 304, 157 A. 280, 283, where a truck partly on the streetcar tracks was struck by a streetcar and where it was argued that the doctrine of last clear chance should be invoked against the streetcar company, it was said in holding that that doctrine did not apply: "Nor is there any evidence that at that time the chauffeur could not have extricated himself from his position of peril by the exercise of ordinary care. All he had to do was to back his truck two or three feet. * * * But even if there were evidence that the motorman could have stopped the car after he saw or should have seen the truck in a position of peril, still, if the chauffeur could then have escaped by the exercise of ordinary care on his part, the doctrine would not apply. It would then be a case of concurrent negligence. And that takes the case out of the operation of the doctrine. * * * Of course, this does not apply to one who *actually* realizes that another is oblivious to impending danger and fails to do what he could to save him."

Appellant in assigning error specifically contends that the conclusions of the experts, Messrs. Reed, Kahl, Mount, and Johnson, that the settlements were fair, were based

upon the theory that he was concurrently negligent and that these conclusions were questions of law and based upon hearsay evidence. Any statement that the settlement was fair was necessarily based on the assumption of liability. Therefore we think these statements were admissible. In any event, the statements were not prejudicial because the finding of concurrent negligence by the trial court was based on sufficient evidence, other than that complained of. He also assigns as error certain questions asked William R. Turner, over objections, as to his ability to get off the northbound track. As above set forth, without objection, Turner testified on cross-examination, that he remained on the northbound track about two minutes; as far as he knew, there was nothing back of him; in looking in his rear vision mirror he could see what was directly back of him; and he could have turned his head to the left and seen any traffic approaching the north. Therefore, if the objections to the questions asked Turner should have been sustained, which it is not necessary that we decide here, as this evidence was later admitted without objection, the error, if any, was harmless. *Blinder v. Monaghan*, 171 Md. 77, at page 85, 188 A. 31, and cases there cited. The judgment will be affirmed.

*Judgment affirmed, with costs.*