UNITED STATES SURGICAL
CORP., et al.

v.

JOHN K. PULSIFER & CO.,
INC., et al.

Civ. No. Y–86–3919.

United States District Court,
D. Maryland.

Feb. 11, 1988.

H. Robert Erwin, Jr., Baltimore, Md., for plaintiffs.

Bradford G.Y. Carney, Baltimore, Md., for defendants and third-party plaintiffs.

James A. Rothschild, and Philip C. Jacobson, Baltimore, Md., for third-party defendants.

### MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Pending in this case is the motion of third-party defendants The Hartford Accident and Indemnity Company and The Hartford Insurance Group (collectively "Hartford") to dismiss the third-party complaint against them. The Court today denies this motion by the attached order. An explanation for this ruling requires a review of the facts and procedural posture of the case.

In its amended complaint and jury demand, filed April 8, 1987, plaintiff United States Surgical Corporation ("Surgical") alleged that Hector and Blanca Torres had filed an amended complaint and summons in state court in Milwaukee, Wisconsin on July 3, 1984, for injuries relating to an EEA disposable stapler manufactured by Auto Suture Company, a division of Surgical. Surgical had an insurance policy covering such liability with Hartford, purchased through John K. Pulsifer & Company, a Maryland insurance agency. Surgical was advised in early 1984, that Pulsifer's business had been transferred to defendant Insurance Agency, Inc. ("AAA Insurance"), a Maryland corporation affiliated with the Automobile Club of Maryland. Plaintiff Surgical's key allegation is that its agent, Joan Baird, forwarded a copy of the Torres' summons and complaint to Martin Ermanis, an agent of defendant AAA Insurance, and that AAA Insurance negligently mailed copies by ordinary mail to Hartford which were never received.

On September 10, 1984, the Torres obtained a default judgment against Surgical

in the Milwaukee County Circuit Court; the order was signed October 3, 1984 and Surgical learned of the judgment on October 4, 1984. Surgical filed a motion to vacate the judgment and while the motion was still pending, entered into a settlement with Hartford whereby Hartford would pay Surgical $175,000 to satisfy the $525,173 default judgment and would assign to Surgical any claims against Pulsifer and AAA Insurance. Finally, plaintiff Surgical alleges that before settling with Hartford on January 24, 1985, investigation of the Torres' claim indicated that the product was not defective and that Surgical could have successfully defended on the merits had Hartford been given timely notice. Therefore, Surgical brought this action against John K. Pulsifer and his company, and against AAA Insurance in two counts, negligence and breach of contract, for their failure to ensure that the Torres' summons and complaint were properly brought to the attention of Hartford.

On August 19, 1987, Pulsifer and his company filed a third-party complaint against Hartford. It recounts the same factual background but alleges that on July 27, 1984, Patsy Campbell, Account Manager of AAA Insurance mailed copies of the Torres' summons and complaint to Hartford. The single count of this third-party complaint alleges in paragraph 20 that Hartford had "a duty to receive mail ... on behalf of Hartford Accident and to forward or otherwise transmit the same to Hartford Accident with reasonable care and in a reasonable and timely manner." The third-party complaint appears to imply that its mailing of the Torres' summons and complaint became lost within the mire of Hartford's own corporate labyrinths. The single count, titled "Indemnity and/or Contribution" does not explain whether this is alleged as an absolute defense or one of contributory negligence; however, the third-party complaint does raise new factual allegations relating to the merits of liability.

■  On November 9, 1987, the Hartford third-party defendants moved to dismiss this new round of finger-pointing, arguing that such indemnification claims, under Maryland law, are derivative in nature and that the third-party claim remains unripe until there has been a finding that defendants/third-party plaintiffs are liable on the original claims of Surgical. Oddly, Hartford argues that the Pulsifer negligence claim is somehow beyond the scope of Surgical's negligence and breach of contract claims, but it admits that the ultimate factual issue is "whether the Third–Party Plaintiffs properly forwarded the suit papers to the Third–Party Defendants or alternatively, whether they took the proper steps to insure receipt of the suit papers by the Third–Party Defendants." Response at 3. Hartford's attempt to evade involvement in a trial where the ultimate liability may depend on its own behavior is not well taken. Surprisingly, Hartford bases its motion to dismiss upon *Soper v. Kahn*, 568 F.Supp. 398 (D.Md.1983). That decision held that a third-party claim was insufficiently independent of the primary claim to support removal jurisdiction by itself, pursuant to the "separate and independent" requirement of 28 U.S.C. § 1441(c). *See* 568 F.Supp. at 403, 404 n. 14. Here, third-party plaintiffs rely upon diversity jurisdiction and Hartford has not raised a proper objection on that ground.

■  Rule 14(a) is derived from Admiralty Rule 56 and provides for liberal[1] impleading of

> a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.

*See* Fed.R.Civ.P. 14(a) advisory committee note. The third-party complaint must "arise out of the same general set of facts" as the original claim and "must be an attempt to pass on to the third party all or part of the liability asserted against the defendant." 3 *Moore's Federal Practice* ¶ 14.07[1] at 14–42 (1982). Since amended

---

1.  *See* 3 *Moore's Federal Practice* ¶ 14.10 at 14–61 (1982) ("the complaint should be allowed to stand, if under some construction of the facts which might be adduced at trial, recovery would be possible").

in 1946, Rule 14(a) has required that third-party claims relate to the potential liability of the defendant; a defendant may not implead third-party defendants who would be liable only to plaintiff on the original claim. *See* Fed.R.Civ.P. 14(a) advisory committee note to 1946 amendment; *Moore's, supra,* 14.15. Of course, there must be potential liability of the third-party defendant to the third-party plaintiff under the substantive law of the state, but federal impleader may provide more flexible procedure than the state courts. *Pyramid Condominium Association v. Morgan,* 606 F.Supp. 592, 598 (D.Md.1985); *Moore's, supra,* ¶¶ 14.03[1], 14.11 at 14-65; 26 *Fed. Proc.* § 59:201 (1984). Hartford's motion to dismiss does not assert substantive failure to state a claim under Maryland law; rather, it is argued that because any such claim has not yet accrued, impleader is not proper. Federal caselaw is to the contrary.

This Court noted in *Morgan, supra,* that "Maryland law recognizes a right to indemnity independent of any contract" where a party's "own conduct, though negligent, is considered passive or secondary." 606 F.Supp. at 595. Such indemnification is "rooted in the concept of imputed or constructive fault." *Id.* at 596. Contribution is available as a derivative cause of action under the Uniform Contribution Among Tort-Feasors Act, Md.Ann.Code Art. 50, § 17(a) (1957). *Id.* at 598. Thus, third-party plaintiffs' complaint has a grounding in state substantive law.

■ Although such an indemnity or contribution claim has not yet accrued,[2] federal impleader practice allows such claims to be joined with the primary claim of defendant's liability to plaintiff because "resort to impleader has the effect of accelerating the determination of the third-party defendant's liability." 6 Wright & Miller, *Federal Practice and Procedure* § 1451 at 280 (1971); *Moore's, supra,* ¶ 14.10 at 14-58; *Fed.Proc., supra,* § 59:202. Thus, even if liability under state law is contingent or derivative, and there is no state procedure for joint trial, Rule 14(a) "enables the indemnitee to make the indemnitor a party to the original action and thus avoid the inconvenience and expense of instituting a separate indemnity suit." *Jennings v. United States,* 374 F.2d 983, 986 n. 4 (4th Cir.1967); *Crim v. Lumbermens Mutual Casualty Co.,* 26 F.Supp. 715, 718 (D.D.C.1939) (indemnity by alleged negligent failure to file suit before the running of Maryland's statute of limitations). "Impleader may ... be allowed where there is a question of fact as to whether the parties are joint tort-feasors and thus *in pari delicto,* or whether the liability is primary and secondary, so that defendant may be entitled to indemnity from the third party." *Moore's, supra,* § 14.11 at 14-65. The Court is free to organize the procedure of the litigation and sequence of determinations and judgments in a practical manner as long as it respects the limitations of substantive state law. Wright & Miller, *supra,* § 1451 at 283; *Moore's, supra,* § 14.11 at 14-68. *See Markvicka v. Brodhead–Garrett Co.,* 76 F.R.D. 205 (D.Neb.1977); *Commercial Credit Development Corp. v. Scottish Inns of America,* 69 F.R.D. 110 (D.Tenn. 1975).

2. "There are important and substantive distinctions between the right to contribution and the right to indemnity." 2 Williston, *A Treatise on The Law of Contracts* § 345 at 767 (W. Jaeger 3rd ed. 1959). The former derives from equity (or statute, as in Maryland), whereas the latter is derived from contract, express or implied. Generally, there exists no right to contribution until payment has been made by the original defendant. *Washington Suburban Sanitary Commission v. Riverdale Heights Volunteer Fire Co.,* 308 Md. 556, 570 n. 3, 520 A.2d 1319 (1987); Williston, *supra,* §§ 345, 1278. Indeed, the contingent nature of both indemnity and contribution claims, whether in contract or negligence, is well-recognized. *Soper v. Kahn, supra,* 568 F.Supp. at 403-04; *Southern Maryland Oil Co. v. Texas Company,* 203 F.Supp. 449, 452-53 n. 5 (D.Md.1962). Under Maryland's contribution statute, a trial court may allow prosecution of the original claim and a claim for indemnity together, but the contingent judgment must await a determination of liability on the primary claim. *Associated Transport v. Bonoumo,* 191 Md. 442, 447, 62 A.2d 281 (1948). *See O'Keefe v. Baltimore Transit Co.,* 201 Md. 345, 350-51, 94 A.2d 26 (1953) (cross-claims not required; separate action for contribution still permitted) and *State Farm Mutual Auto Insurance Co. v. Briscoe,* 245 Md. 147, 225 A.2d 270 (1967) (effect of failure to assert claims against interpleaded parties).

The Court finds nothing irregular in the third-party complaint: it alleges facts that, if true, might prove liability "to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed.R.Civ.P. 14(a). Indeed, the Pulsifer complaint directly addresses the essential facts which must be determined at trial and it would be highly inefficient and perhaps unjust to await a determination of liability to Surgical without allowing Pulsifer the opportunity to prove the facts alleged in the third-party complaint. Such use of Rule 14 is fully appropriate. Furthermore, given the simplicity of the factual allegations, this Court will not entertain a motion to sever the determinations of liability, rather it will require separate liability verdicts and will sequence the judgments appropriately.