## PHILLIPS ET AL. *v.* BALTIMORE TRANSIT CO.

[No. 84, October Term, 1949.]

*Decided February 10, 1950.*

528

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*J. Britain Winter*, with whom were *Basil A. Thomas* and *Winter & Bowen* on the brief, for appellants.

*Walter V. Harrison*, with whom was *Philip S. Ball* on the brief, for appellee.

GRASON, J., delivered the opinion of the Court.

Two suits were instituted in the Baltimore City Court against the Baltimore Transit Company, one by Bessie Phillips (the wife), who claims that she was painfully and permanently injured in the accident hereinafter referred to, and the other by Peter Philips (her husband), for loss of services of his wife. These cases were tried together and at the conclusion of the evidence the trial court directed a verdict for the defendant in each case. From judgments entered on the verdicts the cases come here on appeal.

The accident out of which these cases grew occurred on December 21, 1947, at about 8:15 p.m. That evening Mr. and Mrs. Phillips visited her brother who lived at 1004 West Baltimore Street. They left his home, which is on the north side of the street, about twenty feet west of Schroeder Street, to take a street car at the southwest corner of Baltimore and Schroeder Streets. Baltimore Street runs east and west. Schroeder Street runs north and south. There were two railway tracks on Baltimore Street at that time; the northernmost rails carried the westbound traffic and the southernmost rails carried the eastbound traffic. When they were ready to

leave the brother's home, Mr. Phillips was talking to his brother-in-law, and Mrs. Phillips started out ahead of him. At that time she saw an eastbound street car "almost a block away". She walked on the pavement on the north side of Baltimore Street to the northwest corner of the intersection of Baltimore and Schroeder Streets, where there was a mail box. Her husband followed, several steps behind. She then started, in the pedestrian lane, to go to the southwest corner of the intersection. She testified: "I reach the street car tracks that go west and I look and I seen the car, but it was thirty-five or forty feet far away from me.

"Q. Which track were you on at that time, when you saw the car thirty-five or forty feet away from you? A. This one, the middle one.

"Q. Which of the two middle rails, the one that the car coming towards you was on, or the other one? A. The other one.

"Q. In other words, you were on the rail next to the northernmost rail? A. Yes. * * * I was there and I was looking and I see the street car about thirty-five or forty feet. * * * I walk fast and go to the street car line and turn to stop to get the street car, but the street car never stop." She was then hit by the car. She said that when she first saw the car it was "moving fast and shaking from side to side", and when she looked at it again it was still coming fast, "still thirty-five, forty miles an hour". At that time the car was thirty-five or forty feet away from her she said. She did not know how fast it was going. "Maybe thirty miles, I don't know how many miles.

"Q. Then you didn't look again until you got hit? A. No, because I'm near to the corner."

There is some evidence that when she left her brother's home she walked in the street along the northernmost rail of the westbound track to the pedestrian lane. But, irrespective of how she got there, she was at the south rail of the westbound track when the oncoming street car was thirty-five or forty feet from her. The distance

between the two tracks is about five feet, and had she remained there she would not have been struck by the oncoming car.

The husband testified that after he walked out of his brother-in-law's house he saw the car coming. "My wife said, come, the car's coming." He said at that time the car was about a half block away.

"Q. What happened then, after that? A. My wife crossed the other side." He then said he followed his wife and was about seven or eight feet behind her and he did not see his wife until "after the street car stopped, * * * about middle of Schroeder Street" and his wife was lying "about twelve feet in the middle of Schroeder Street".

Lillian M. Rifkind was riding on the left side of the car, at about the middle, when the accident happened. She said: "I didn't see her when she was hit, I only saw the lady when she was crosing the street and I naturally didn't follow her, I couldn't see in front of the car." When she first saw her she "was walking very fast, not running exactly" and at that time "she appeared to be between the north curb and the west bound track". She was asked, on cross examination, if she did not say, the day after Christmas, 1947: "When I first saw her, but it is fairly dark at that place so I don't know the exact position. I do know she was very close to the car. She ran across directly in front of the car. I heard the motorman apply his brakes and a moment afterwards there was a bump and we stopped immediately. I got up, looked out and saw the woman lying in the street, between the front door of the car and the south curb. The motorman had jumped out and some people were picking her up and moving her over to the gutter. I did not get off the car and do not know how badly she was hurt. She appeared to be conscious. She was later taken away in an ambulance. The weather was clear and dry. A. Correct.

"Q. Does that refresh your recollection whether she was walking fast or running? A. Well, I'd say she was

walking pretty fast, I wouldn't say running. I didn't see anyone with her." She further testified: "I just looked out and saw this women walking fast, as I said, with the shopping bag, and I didn't bother to look any more. I didn't know how she crossed. There was a colored woman sitting on the long seat and when we heard the grating noise of the brakes, this woman said, My Lord, that woman's been hit, and she was in the front seat, and then I got up, walked to the front of the car and looked out, when they picked her up."

We have said several times that in the absence of traffice control: "It is important to remember that there is no right of way at a street crossing in favor of a pedestrian against a street car. Both are bound to exercise reasonable care." *Caryl v. Baltimore Transit Co.*, 190 Md. 162, 170, 58 A. 2d 239, 243; *Watson v. Storrs*, 167 Md. 685, 175 A. 263, 264; *Girton v. Baltimore Transit Co.*, 192 Md. 671, 676, 65 A. 2d 329, 330, 331; *Consolidated Ry. Co. v. Rifcowitz*, 89 Md. 338 at page 341, 43 A. 762.

It is contended that in considering the question of negligence in this case, that the fact that Mrs. Phillips thought that the car was going to stop to take on passengers should be considered. In this connection there is no evidence in the case that there was anybody on this corner at all, and certainly if there was no one on the corner it was needless for the operator of the car to stop to take on passengers. We said, in *Girton v. Baltimore Transit Co., supra* :"Generally, when the driver of an automobile approaches a street car track at an intersection, he cannot assume that an approaching car will stop at the intersection, but he must pay attention to the approach of the car, and if he deliberately takes the risk of driving across the track in disregard of the danger of a collision, when a person of ordinary prudence would not take such a risk under the circumstances, he is guilty of negligence."

Just as it was the duty of the driver of the automobile in that case to watch the street car and not rely on an

assumption that the car would stop, so it was the duty of Mrs. Phillips to watch the street car she saw approaching and not assume that it would stop for passengers.

In *Watson v. Storrs, supra,* the court said [167 Md. 685, 175 A. 264]: "We have here a man leaving a place of safety and walking slowly a distance of 16½ feet to cross in front of a car which before he started he had seen approaching at a distance of only 65 feet."

This was held to be contributory negligence as a matter of law.

We cannot adopt the theory of the appellants that the doctrine of last clear chance applies in this case. This woman, when she arrived at the southernmost rail of the westbound track, was in a place of safety. The street car at that time was traveling at least thirty miles an hour, and was about thirty-five or forty feet from her. There was no reason for the motorman to suppose that she would run in front of the street car, but even if we assume that he thought she would run in front of the street car, it would have been impossible at that time for him to have stopped the car in order to prevent injury to Mrs. Phillips. *United Rys. & Electric Co. v. Kolken,* 114 Md. 160, 78 A. 383; *Baltimore & Ohio R. R. v. Leasure,* 193 Md. 523, 69 A. 2d 248.

If the defendant was guilty of negligence (which we do not decide) nevertheless such negligence would be immaterial if Mrs. Phillips, by her action, directly contributed to her own injury. We think that the ruling of the learned judge below in withdrawing these cases from the consideration of the jury and declaring Mrs. Phillips, as a matter of law, guilty of contributory negligence, was correct.

*Judgment in each case affirmed, with costs.*