## BALTIMORE TRANSIT CO. *v.* REVERE COPPER & BRASS, INC.
[No. 91, October Term, 1949.]

612

*Decided March 9, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Philip S. Ball* and *Lloyd A. Dreiling* for appellant.

*Paul M. Higinbothom* and *Paul R. Kach* for appellee.

GRASON, J., delivered the opinion of the Court.

This case is an appeal from a judgment entered below in favor of the plaintiff against the defendant for damages to an automobile, caused by a collision between it and two cars of the defendant. The appellant is The Baltimore Transit Company (herein called Company) and the appellee is the Revere Copper & Brass, Inc. (herein called Revere).

The accident happened at about 5:45 P.M. on July 8, 1948, where Liberty Street crosses the tracks of the Company, in Baltimore City. It was daylight, clear, and the streets were dry. The automobile was a 1948 Plymouth four-door special deluxe sedan, in perfect condition, and was operated at the time by Harry G. Harper, the agent of Revere.

The circumstances surrounding this accident may be stated as follows: Fayette Street runs east and west. Liberty Street, generally north and south, intersects Park Avenue at an acute angle between Fayette and Baltimore Streets. Park Avenue is the first street west of Liberty Street. It runs generally north and south. The Company has two sets of railway tracks on Park Avenue curves into Liberty southerly at this intersection. Cars are operated north bound on the east tracks and south bound on the west tracks. At Fayette Street and Park Avenue and Liberty Street Traffic is controlled by a single traffic light, and when this light is green at Park Avenue it is green at Liberty Street.

On the evening of this accident there was a line of cars at Fayette and Liberty, waiting for the green light to proceed south. When the green light was given this traffic proceeded south on Liberty Street. The Revere car, operated by Harper, was second in line and a

car followed Harper, driven by Robert Simonaire, a witness produced by Revere. He was not going to cross the tracks but turned left for the purpose of going to Hopkins Place and was about ten feet from the Revere car and saw the red light in the rear of that car come on when Harper applied his brakes. He then saw the "street car coming up". "* * * just as he was getting to the street car tracks I seen his brakes go on, his rear lights, and then I threw mine on and at that time then I saw the street car coming up * * * he was getting pretty close to the street car tracks. * * * it was just a matter of seconds before the street car hit him." "Q. At that time you say he was practically in the north bound car track? A. That is right." At that time the witness said the street car was "about 20 or 30 feet" away from the automobile. "When the north bound street car hit him it sort of pushed him on the side a little. I happened to look up and seen this other car coming down and it looked (like) the motorman was frozen at the wheel; he just kept on coming; he just hit right into him." "When I saw him (the south bound car operator) he was at least 40 feet." This was after the Revere car "had been hit". He would not say the south bound car "was going fast". He said on cross examination: "It (the north bound car) just barely hit it (the automobile) and it sort of swerved him around just a little, but the other car coming down, he pushed it all the way around * * *."

Harry G. Harper, who was driving the Revere automobile, described the accident as follows: "As I approached the street car track, approximately thirty feet away from the tracks at the time, I looked to my left and I saw a street car just leaving Baltimore Street coming north. * * * the front end of the car was on this side (north side) of Baltimore Street. * * * it was going slow." He did not "entirely stop" the automobile at that time "because seemingly there was plenty of time to cross the tracks in safety. * * * I then looked to my right to see if there was any traffic

coming from the right of me. * * * I saw a street car at Fayette Street stopped." it was "stopped on the north side of Fayette Street either loading or discharging passengers, * * *. I looked back from my right to the left and I saw the—well, practically on the street car tracks at that time." "I saw this north bound street car coming at me; he was approximately 25 or 30 feet from me at the time." He could not say the speed the street car was traveling at the time, "but he was going much faster then he was at the time I had first seen him. * * * I immediately started to jab on ·the brakes. I saw if I did so I would stop in the middle of the tracks, and from there on I accelerated the speed of the car trying to clear the tracks." "The north bound street car hit my automobile approximately (at) the left front fender and the left front door." "He (the operator of the street car) was successful in stopping at approximately the time he struck me. He didn't strike me very hard." Harper "turned off the ignition key and tried to get out of the left side of the car." It was jammed. He then "slid over on the right side and took hold of the right door handle and tried to get out that side. As soon as I grabbed hold the door handle the south bound street car came down and struck the right hand side of it and it slewed the car around." "It struck the automobile approximately (at) the right front fender, tossing it around and jamming it in between the two street cars." "Q. How long do you suppose you had been sitting there after the first impact before the south bound street car struck you? A. I really can't say exactly, sir, but it was some little time. It wasn't a matter of five or ten minutes or anything like that." He said as he started to cross the north bound car tracks his speed was "approximately 20 miles an hour". He does not know what became of the car in front of him. When he looked to his left when he was about 25 or 30 feet from the tracks, the north bound street car was "approximately 200 feet" away. He then looked to his right and saw the south bound street car at Fayette Street. As he turned his

head again to the right he was "approximately on the car track; very close to being on them." It was then he saw the oncoming street car 25 or 30 feet away.

The witness Pfannensteel ran a parking lot on the east side of Liberty Street between Fayette and Baltimore Streets. He was standing in the driveway of the lot at the time of the accident and he describes it as follows: "Well, the way I seen it, this man driving the automobile was coming south on Liberty Street and and it appeared to me as he started to turn he slowed down, and just as he was crossing the tracks the street car coming south—north, I mean, was making a little bend there and as this man crossed the track this man on the street car, it seemed like he put his foot on the gas, what I think, I think, he was looking to his right to see if any traffic was coming." "Q. Now, did you see the south bound street car strike the automobile too after it had been struck? A. As I looked south when I seen this man starting across the track, I happened to turn to the right and it seemed to me that the man was just crossing Fayette Street when he was going across the tracks." He was referring to the operator of the south bound street car. "Q. Well, now, after you saw the north bound motorman put on his speed at the bend and strike the automobile, how far away at that time, if you know, was the south bound street car? A. I imagine around thirty feet. Q. Was there an interval of time between the collision with the north bound street car and the time it was struck by the south bound car? A. Yes, sir, I imagine a couple of seconds, somewhere around there."

The witness Asch was standing at the northwest corner of Baltimore and Liberty Streets, about a half block from the scene of the accident. He said: "I heard a screech of some kind—I don't know where it came from—and the car swerved a little bit to the right, and I saw the street car coming up towards me, and as I recall he made absolutely no effort to stop; it just kept coming and it struck this automobile amidships, I would

say, and threw it over a little bit to the side." Referring to the south bound street car the witness said: "I could see that the south bound street car was coming down making a frantic effort to stop, but it just didn't and it struck the automobile and he wedged it between the two cars." He stated the south bound street car was going "faster than 25 miles an hour". He said he imagined the south bound street car "tried to put on the brakes". He couldn't tell exactly at which point but he did know "either the brake mechanism or the wheels fused and they had an awful time getting it away from there". "Q. How far away from where the collision occurred was the south bound street car? A. About 35—30 feet, something like that."

This was the evidence that the appellee offered to sustain its case. The operators of both the north and south bound street cars were experienced men and had operated street cars for twenty years.

Mr. Burnham, the operator of the north bound street car, stated that he was going across Baltimore Street when he saw the traffic start across Fayette Street. "Just as I got there at that curve this automobile coming north—south bound was—I seen him pick up speed and swing to his right. As I saw him do that I jammed on my brakes—threw my brakes to the floor, which my brakes locked, threw it in emergency, sand, the bells sounded, emergency bell of the car, and my left front corner of my car collided with the left front driver's seat door." The automobile was moving at the time. "I was about 25 or 30 feet from him practically coming headon." "Q. Do you know where the south bound street car was at that time? A. I didn't exactly notice until the impact and the next thing I noticed him coming down; the two impacts simultaneously occurred, about a second or so between the two contacts." He said when his car struck the automobile he pushed it "maybe two or three feet". He said at Fairmount Avenue, which intersects Park Avenue from the west but does not cross it, and which is a little north of the crossing, there is

a curve and that he had increased his speed a little bit and that after he was across Baltimore Street he increased his speed a little bit. He said he was watching the traffic ahead of him.

The witness Schwind operated the south bound street car. He saw the automobile "on Liberty Street almost even with my car which was on Park Avenue". "I noticed the number 32 street car north bound and this automobile south bound. I didn't know exactly what would happen; I slowed my speed and when the 32 car collided with the automobile he slewed him along a little ways north bound and before I could get my car stopped I had struck the automobile also." "Q. They came together how far in front of you? A. Well, another 25 or 30 feet. I don't know exactly the distance. It was close." The witness stated that when the automobile was struck by the north bound car it was shoved "north slightly five or six feet. Wouldn't that stop him— wouldn't that turn him back up to me? I am south bound."

There was other testimony in the case tending to show that the north bound street car put on its brakes and did everything to stop the car, but it will not be necessary to refer to this testimony.

At the conclusion of the appellee's case the appellant offered prayers A and B. A was a general demurrer to the evidence—B, that appellee was guilty of contributory negligence as a matter of law. Each of these prayers were at that time refused and reoffered at the end of the whole case and decision thereon was reserved. Appellant filed a motion for judgment N. O. V. or a new trial, which was overruled.

It has been often said by this court that: "Where it is manifest to the court upon the plaintiff's own showing and the uncontradicted evidence in the case that there is no rational ground upon which a verdict can be based for the plaintiff, it becomes the duty of the court to direct a verdict for the defendant." (see cases there cited.) *Baltimore Transit Co. v. Young*, 189 Md. 428, 436, 56 A. 2d 140, 144.

It was held that where one deliberately went forward in the face of an imminent and apparent danger because she thought she could get across the south bound track before the car running on that track reached the point at which she was crossing was "sheer recklessness". *McNab v. United Rys. & Electric Co.,* 94 Md. 719, 726 51 A. 421.

And this is the law in the city, in the suburbs, or open country. We are not unmindful of the rule that street cars and automobiles have reciprocal rights in the use of the streets in the City of Baltimore, and due care must be exercised by the operator of each vehicle to prevent accidents. *United Rwys. & Electric Co. of Baltimore v. Mantik,* 127 Md. 197, 96 A. 261; *Girton v. Baltimore Transit Co.,* 192 Md. 671, 676, 65 A. 2d 329, 331.

"But a street car may be so close to the intersection that the driver of an automobile would be rash in attempting the hazard of crossing, and in such a case the court should adjudge him guilty of contributory negligence as a matter of law. (See cases cited.) When the evidence shows that the plaintiff's injury resulted from a deliberate but unsuccessful effort to cross the car track in the face of evident danger, or that the collision was due to a gross miscalculation as to the plaintiff's chance of being able to clear the track before the street car would reach the point where the collision occurred, a recovery is denied upon the ground that such a reckless attempt to cross the track was obvious negligence on the part of the plaintiff * * *.

"Generally, when the driver of an automobile approaches a street car track at an intersection, he cannot assume that an approaching car will stop at the intersection, but he must pay attention to the approach of the car, and if he deliberately takes the risk of driving across the track in disregard of the danger of a collision, when a person of ordinary prudence would not take such a risk under the circumstances, he is guilty of negligence." (See authority cited.) *Girton v. Baltimore Transit Co., supra,* 192 Md. 671, 677, 65 A. 2d at pages 331,

332; *Philips v. Baltimore Transit Co.*, 194 Md. 527, 71 A. 2d 430.

It is established by the proof in the case, and indeed conceded that the distance from the crossing of the tracks where this accident occurred and the north side of Baltimore Street to the south is about 200 feet, and north to Park Avenue and Fayette Street is about the same distance; that a driver of an automobile south bound on Liberty Street has a clear view to Liberty and Baltimore Streets; that there is nothing to obstruct the view from the scene of the accident to the intersection formed by Park Avenue and Fayette Street.

Harper testified that when he was at a point 25 or 30 feet from the north bound tracks he saw the north bound street car at Baltimore and Liberty Streets, 200 feet away. At that time he turned his head and saw, at Park Avenue and Fayette Street the south bound street car involved in this collision, and when he turned his head again, which must have been almost instantaneously, he saw the north bound car 25 or 30 feet south of the point of collision. It is incredible that the street car traveled 165 feet in the twinkling of an eye. In short, it is not true, and this should be apparent to the most credulous.

The credible evidence in this case, which is not contradicted, and all inferences taken most favorably to the appellee, compel one of two conclusions, equally disastrous to the appellee, that when he saw the north bound car he tried to cross the tracks before the car; or he did not see it at all, when if he did look he must have seen it. In either view he was guilty of contributory negligence as a matter of law, and the case should have been withdrawn from the jury by the court, unless the facts admit of the application of the doctrine of last clear chance.

It is common knowledge that these large street cars of the appellant can not be stopped instantly. It takes some effort of the operator to stop a car traveling 25 or 30 miles an hour. Harper said that the operator

of the north bound street car "was successful in stopping at approximately the time he struck me. He didn't strike me hard". The witness Simonaire said that when he first saw the south bound street car it was at least 40 feet from the appellee's automobile. He said that the operator was "frozen at the wheel" and kept coming and just hit right into him. His evidence that this operator was "frozen at the wheel" and kept on coming and hit him is without probative force and worthless. It is established that the south bound car was stopped by its operator almost instantly after it collided with the automobile, and it is impossible that the south bound motorman, like "Old Man River", kept rolling along, and hit the automobile, without making any effort at all to stop the street car. Harper suffered no personal injuries, and if the operator of the south bound car made no effort to stop, but just ran into the automobile, then Harper's escape from any personal injury whatever was a miracle.

The witness Pfannensteel said that as Harper started to turn he slowed down, and just as he was crossing the tracks the north bound street car was making a little bend to the left; and, as Harper crossed the tracks the operator accelerated the speed of the car, and he thinks that the motorman speeded the car and ran down Harper as he was actually crossing the tracks. He does not say how close the street car was to the automobile when it was actually on the tracks, and this statement was manifestly an expression of the witness's theory as to how the accident happened. We cannot believe that the operator of the north bound street car deliberately ran into this automobile when it was in a perilous position, and he could have prevented it. Theory and supposition are worthless as a foundation to support a verdict. As we have said, the operator did almost stop the street car, and according to Harper's testimony he did a good job. Pfannensteel also said that when he looked south and saw Harper start across the tracks he happened to turn to the right, and it seems to him that

the operator of the south bound street car was just crossing Fayette Street, a distance from the scene of the accident of 200 feet. At that time Harper was crossing the railway tracks in the appellee's automobile. In the next breath he said that at that time the south bound car was about 30 feet from the scene of the accident, and that the interval between the two collisions was about a couple of seconds. This evidence is incredible. He could not see the south bound car cross Fayette Street nearly 200 feet from the scene of the accident and almost instantly see it again 30 feet from the stricken automobile. If the south bound car was at Fayette Street at the time the north bound car hit the automobile, the difference in time between the two collisions could not have been only a couple of seconds. This evidence is contradictory, confused, and perfectly incredible, and should not be allowed to be a basis for a verdict.

The witness Asch who was standing at the northwest corner of Fayette and Liberty Streets said he saw the automobile proceed south. He does not know the speed at which it was moving; he heard a screech of some kind and the car swerved a little bit to the right; he saw the street car coming up towards him; and as he recalls it, the operator made absolutely no effort to stop; it just kept coming and it struck the automobile and threw it a little bit on the side. The street car came almost to a stop, and pushed the automobile only a very few feet. Harper said it just pushed the automobile a few feet. It is not shown that the north bound street car did the automobile any considerable damage. Asch saw the south bound car and said it was coming faster than 25 miles an hour; he could not tell when the south bound car applied its brakes, but he does know "either the brake mechanism or the wheels fused and they had an awful time getting it away from there". It is perfectly apparent that this witness does not know how far north of the scene of the accident the south bound street car operator applied his brakes. Schwind, the operator of the south bound car, said he was 25

or 30 feet north when the first collision occurred and if the automobile had not been pushed five or six feet towards him he would have been able to stop his car without striking the automobile. It appears, therefore, from the credible evidence in the case, that neither the north nor south bound motorman saw the peril that Harper, who was driving the appellee's automobile, was in, in time by the exercise of ordinary care and prudence to have prevented either the first or the second collision. The testimony of the appellee's witnesses, which we have said was incredible, in judicial mathematics amounts to zero, and Chief Judge McSherry, in *Berry v. Safe Deposit & Trust Co.*, 96 Md. 45, 56, 53 A. 720, 724, said: "The sum of any number of zeros will always be zero, and this is true in the law of evidence as well as in arithmetic." This was said in a will case, but zero is zero in any case.

There was some mention of the speed of the street cars. In *E. H. Koester Baking Co. v. Poller*, 187 Md. 324, 50 A. 2d 234, 237, that subject is discussed in relation to an accident which happened on Hanover Street, in Baltimore City, between a street car and a truck, to which we refer; but we say here as was said in that case: "But even if we assume, in this case, that top speed was unreasonable, and afforded some evidence of negligence, we think there is no showing that the speed contributed to the happening of the accident."

It was said in that case: "Viewing the testimony in the light most favorable to the plaintiff, the truck was not more than 40 feet from the street car when it entered the south-bound tracks. Even if the street car had been travelling at a speed of 25 miles per hour at that instant, it could not have been stopped in less than a distance of 75 feet. Thus, in any aspect of the case, the collision was inevitable."

In *National Hauling Contractors Co. v. Baltimore Transit Co.*, 185 Md. 158, 168, 44 A. 2d 450, 454, it is said: "As this Court has pointed out in a number of cases, the doctrine is only applicable when the defendant's

negligence in not avoiding the consequences of the plaintiff's negligence, is the last negligent act. It can never be invoked when the plaintiff's own act is the final negligence." (See authorities cited.) In that case the driver of the tractor-trailer "saw a two-car trolley train approaching from his left on Baltimore Street, '75 or 100 feet away' and coming down a five per cent grade."

In *Fillings v. Diehlman,* 168 Md. 306, 311, 177 A. 400, 403, it was said: "* * * the street car was approximately 135 feet away when the automobile started to skid diagonally across the track, it does not appear to what extent that distance had been reduced when it should have become apparent that the continuously moving automobile would not pass beyond the track in safety." The accident in that case happened on Hanover Street, in Baltimore City. The doctrine of last clear chance was denied in those cases.

*Colgate & Co. v. United Rys. & Electric Co.,* 156 Md. 472, 144 A. 519; *Baltimore & O. R. Co. v. Leasure,* 193 Md. 523, 69 A. 2d 248.

The evidence in this case shows that the north bound car was about 25 or 30 feet when its operator became aware of the peril of the appellee's car operated by Harper. The south bound car was about 25 or 30 feet north of where the north bound street car collided with the automobile when its operator became aware of the accident. He had no reason to think that the driver of the automobile would cross the tracks when he could, or should have seen his street car in such close proximity. In our opinion the uncontradicted evidence in the case is that each motorman used reasonable care and prudence to avert the accident after the Revere car was on the tracks, and was, nevertheless, unable to prevent the accident. There is no evidence in this case legally sufficient to base the application of the doctrine of last clear chance.

The appellee contends that after the collision Harper, who was sitting on the left-hand side of the car, attempted to open the door, but that it was jammed, turned off

the ignition, moved over and attempted to get out of the right-hand door, and that the time consumed in doing this afforded the operator of the south bound car sufficient time to have stopped it before it hit the automobile. It is a reasonable inference that Harper acted with great speed in order to free himself from injury, and we cannot accept the appellee's theory.

As the doctrine of the last clear chance cannot be applied, the jury should have been directed to find a verdict for the appellant because of the contributory negligence of Harper, the appellee's agent.

*Judgment reversed, with costs, without a new trial.*